Lucy E. York, Appellant, v. Central Illinois Mutual Relief Association, Appellee.

Gen. No. 8,349.

Opinion filed February 3, 1930.

GREEN & PALMER, for appellant; HENRY I. GREEN, ORIS BARTH and GEORGE E. MARTIN, of counsel.

CAMPBELL & GRAHAM, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

This case was tried before the court without a jury upon a written stipulation of facts. The jury found the issues joined in favor of appellee, defendant in the case, and entered judgment accordingly. The action is in assumpsit upon a certificate or policy of insurance.

The facts, as they appear from the stipulation, show that the Central Illinois Mutual Relief Association was incorporated under an act entitled, "An act concerning corporations," approved April 18, 1872 Cahill's St. ch. 32, ¶ 159 et seq., as a corporation not for a pecuniary profit. John M. York, now deceased, became a member of this association and a benefit certificate was issued to him bearing date, September 24, 1923, and he paid all contributions for death benefits thereunder prior to November 14, 1927. An act was passed by the legislature which became in force July 1, 1927, Cahill's St. ch. 73, ¶ 435 (1) et seq., entitled, "An Act to incorporate mutual benefit associations on the assessment

plan, intended to benefit the widows, orphans, heirs and devisees of deceased members thereof and members who have received a permanent disability and to provide for and regulate the control of such associations and to provide penalties for violation of the provisions thereof.'' Prior to November 14, 1927, at the request of the department of trade and commerce, the Central Illinois Mutual Relief Association incorporated under the Act of 1872, delivered to said department its articles of incorporation and said articles were marked canceled by said department, and prior to November 14, 1927, there was filed in the department of trade and commerce pursuant to the provisions of section 15 of the Act of 1927 an application as follows:

''State of Illinois

County of Champaign—ss.

To the Director of Trade and Commerce, and Superintendent of Insurance:

''We, the undersigned, Chas. W. Nunan

Kenneth Buchanan

E. H. Marriott

L. B. King

constituting a majority of the Board of Directors of The Central Illinois Mutual Relief Association—Illinois, a domestic corporation incorporated and transacting business under 'An Act concerning corporations,' approved April 18, 1872, as a corporation not for pecuniary profit, for the purpose of benefiting the widows, orphans, heirs and devisees of deceased member thereof, and members who have received a permanent disability, where the member shall receive no money as profit or otherwise except for permanent disability, do hereby declare our desire to incorporate as a mutual benefit association under An Act of the General Assembly of the State of Illinois, entitled, 'An Act to Incorporate Mutual Benefit Associations on the assessment plan, intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and

members who have received a permanent disability and to provide for and regulate the control of such associations and to provide penalties for violation of the provisions thereof,' in force July 1, 1927, and for the purpose of such incorporation, we hereby adopt the following articles of association, to wit:

"1. The name or title by which such association shall be known in law is:

"The Central Illinois Mutual Relief Association (a mutual benefit association).

"2. The principal business office shall be located in the City of Champaign, Ill., County of Champaign, State of Illinois.

"3. All of the assets of existing corporations, herein referred to as the corporation, shall be transferred to the incorporated association herein referred to as the association, and the association shall assume all of the liabilities of the corporation. Likewise, all of the members of the corporation shall, ipso facto, become members of the association and the association shall issue to each such members a certificate of membership, the purpose of the provisions of this section being to effect the continuation of the organization insofar as is possible.

"4. The object for which this association is formed is to provide benefits for the widows, orphans, heirs and devisees of deceased members of the association and members who have received a permanent disability, such benefits to be paid by accumulations, resulting from the assessments levied on the remaining members of the association. The maximum amount of benefits to be paid under the certificates of membership are as follows: . . .

"5. The plan which shall be followed in carrying out the object is as follows, to wit:

"The association shall operate on the post-mortem assessment plan. Whenever the association shall have been notified of any loss under its certificate of member-

ship, it shall proceed to levy and collect assessments as provided in Sections 10 and 11, which is the Act under which the Association is incorporated. Two general accounts shall be established to be known as the 'Benefit Account' and 'Expense Account.' The guarantee fund, as hereinafter provided, and all assessments collected from members of the association for the purpose of paying losses incurred under its certificates of membership, shall be placed in the Benefit Account and from such account shall be paid all such losses incurred. No other disbursements shall be made from the Benefit Account and no sums shall be transferred from the Benefit Account to the Expense Account. Into the Expense Account shall be placed all assessments collected from members for the purpose of defraying the expenses of the association and from such account shall be paid all salaries, expenses, fees, taxes, costs of defending or prosecuting suits and all other items, relating to the management of the association. Within six months from the date hereof a guaranteedged that they had executed the same for the purpos- $1.00 per member, shall be accumulated and thereafter such fund shall be maintained as provided in Section 14 of the Act under which the association is incorporated.

"6. The management of the aforesaid Central Illinois Mutual Relief Asso. shall be vested in a board of Five Directors, who shall be elected from and by the members at such times and for such periods not exceeding three years as shall be provided for in the by-laws.

"7. The following persons are hereby selected as the Directors to control and manage said association until its first annual meeting, viz:

Chas. W. Nunan
Kenneth Buchanan
John H. Snyder

Louis B. King
Ezra Marriott.

"8. No person shall become a member of this corporation who is under 1 year or over 70 years of age.

"9. Applications for membership will no . . . be required to undergo a medical examination before being admitted to membership in this corporation.

SIGNED

Chas. W. Nunan
Kenneth Buchanan
E. H. Marriott
L. B. King"

On December 3, 1927, York made payment to appellee Death Benefit Assessment No. 27, levied on account of the death of Nellie M. Thompson on October 6, 1927 and on account of the death of Allen Duncan on October 9, 1927, both of whom held benefit certificates in the Central Illinois Mutual Relief Association as organized under the act of 1872 and written notice of said assessment was given to the assured, John M. York, by the Central Illinois Mutual Relief Association, the appellee, under date of November 15, 1927. On December 30, 1927, there was issued by Central Illinois Mutual Relief Association, appellee, to John M. York a benefit certificate bearing date of December 30, 1927, the same being the certificate on which a recovery in this case is now sought. Accompanying this certificate when it was delivered to York, was the following letter:

"To Our Members

"We herewith hand you the new form of policy which is in accordance with the requirements of the Insurance Department of the State of Illinois. We suggest that you keep the old certificate as well as the new one, for reference.

"There is no change in the amount of the certificate.

CENTRAL ILLINOIS MUTUAL RELIEF ASSOCIATION

Chas. W. Nunan, Secretary.''

After December 30, John M. York made contributions on account of assessments levied on him in the amount of $6. The only application made by John M. York for a benefit certificate is the one executed for the purpose of obtaining the original certificate issued by the Central Illinois Mutual Relief Association organized under the act of 1872. John M. York died as a result of suicide September 19, 1928. Proofs of death were duly made as required by the rules of appellee and thereupon appellee tendered to the beneficiary, appellant, a sum of $5 in satisfaction of the amount due, which sum was refused by her and appellee denied any further liability in the premises.

The original application and certificate are dated September 24, 1923 and neither the application nor the certificate contain any provision denying liability in case the member should come to his death by suicide. The certificate is very short and provides that John M. York is a member of the association and upon satisfactory proof of his death the association will pay to Lucy E. York, wife, $1,000, provided that said member has fully complied with the by-laws and regulations of the association.

Section 15 of the act of 1927, Cahill's St. ch. 73, ¶ 435 (15), is as follows:

''Any existing domestic corporation transacting business under an Act entitled 'An Act concerning Corporations' approved April 18, 1872, as a corporation not for pecuniary profit, for the purpose of benefiting the widows, orphans, heirs and devisees of deceased members thereof, etc. . . . ; and all associations engaged in the business of insurance of lives of its members and not subject to any other of the insurance laws of this State shall re-incorporate under its existing corporate name or a corporate name

selected for that purpose in accordance with this Act under the provisions of this Act upon filing with the Director of Trade and Commerce, a declaration of its desire to do so, signed and duly acknowledged by a majority of the board of directors, trustees or managers, together with a certificate of association as required of associations proposing to organize under the provisions of this Act. Upon receipt of such declaration and certificate of association, the Director of Trade and Commerce, shall examine the same and if he shall find that such certificate of association is not inconsistent with the provisions of this Act, he shall cause the same to be recorded in a book to be kept for that purpose and shall furnish the association a certified copy of such declaration and articles of association, which thereupon shall be filed and recorded in the Recorder's office of the county where the original certificate of such association is recorded, and such corporation shall thereupon be deemed to be incorporated under the provisions of this Act.''

At the same session of the legislature of 1927, an act was passed entitled, ''An Act to amend sections 29 and 31 of 'An Act concerning corporations,' approved April 18, 1872 as amended.'' (Session Laws 1927, page 367.) Section 31 of this amendment, Cahill's St. ch. 32, ¶ 161, provides as follows:

''Associations and societies which are intended to benefit any person or persons or widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, except for permanent disability, heretofore incorporated under the provisions of this Act, shall not, after this Act becomes effective, engage in such business other than that they may retain their corporate existence for six months for the sole pur-

pose of winding up their business or re-incorporating under some act, the enforcement of which comes within the jurisdiction of the Department of Trade and Commerce of this State.''

Under the above acts, the Central Illinois Mutual Relief Association as incorporated under the law of 1872 had to do one of two things within six months after July 1, 1927, either to wind up its affairs and quit business or to reincorporate under the act of 1927. It was clearly the intention of the legislature to permit such corporations existing under the act of 1872 to reorganize under the act of 1927 if they so desired. This privilege is extended to them as corporations and not to the individual members thereof as such in their personal capacity. The Central Illinois Mutual Relief Association, through its officers and board of directors chose to avail itself of the option extended by the statute, to reincorporate. The declaration filed with the department of trade and commerce is a declaration addressed to the Director of Trade and Commerce and superintendent of insurance and is as follows:

''We the undersigned, Charles W. Nunan, Kenneth Buchanan, E. H. Marriott, L. B. King, constituting a majority of the Board of Directors of the Central Illinois Mutual Relief Association—Illinois, a domestic corporation incorporated and transacting business under 'An Act concerning corporations,' approved April 18, 1872, as a corporation not for pecuniary profit, for the purpose of benefiting the widows, . . . do hereby declare our desire to incorporate as a mutual benefit association under an Act of the General Assembly of the State of Illinois, entitled, 'An Act to incorporate mutual benefit associations on the assessment plan, intended to benefit the widows, etc.' enforced July 1, 1927, and for the purpose of such incorporation, we hereby adopt the following articles, to-wit, etc.'' This was clearly an attempt of the original cor-

poration to reincorporate as such under the act of 1927. This is further shown by the declaration wherein it is stated that the title of the new corporation shall be the same as the old; the principal business office shall be located in the City of Champaign; that all the assets of the existing corporation shall be transferred to the new corporation; that the new corporation shall assume all the liabilities of the old corporation; and that all the members of the old corporation shall, *ipso facto,* become members of the new corporation which shall issue to each of the old members a certificate of membership; and also that, ''the purpose of the provisions of this section being to effect the continuation of the organization insofar as is possible.''

The new certificate, or policy, was delivered to John M. York without requiring any new application or health examination. It, however, contained a provision which was not in the original application or certificate, as follows:

''Self destruction within one year from the date hereof, while sane or insane, is a risk not assumed under this certificate and in such event, the liability hereunder shall be limited to the amount of assessments paid by the member.''

John M. York committed suicide within the year following the issuance of the new certificate. The principal question presented for our determination is whether the insured was bound by the provision in the new policy denying liability in the event that death should be caused by suicide within one year from the date thereof. The new policy provides: ''This certificate and the application therefor shall constitute the entire contract with the member.'' No application was required of the insured for the issuance of the new policy. It is contended by appellee that upon the reincorporation of the old company it became an entirely new corporation; that the old contract and the pro-

visions therein became null and void and that the assured, having accepted the new contract was bound by the provisions contained therein. It is a familiar rule of law that as between the insurer and the insured all doubtful provisions of the contract between them will be resolved in favor of the insured. By the articles of incorporation of appellee all the members of the old corporation became *ipso facto* members of the new corporation and the new corporation assumed all the liabilities of the old corporation. One of the liabilities of the old corporation was to pay to the beneficiary of the insured the sum of $1,000 upon his death and that notwithstanding that his death may have been caused by suicide. Only certificate holders could be members of the corporation and the deceased only became a member of the old corporation by virtue of his certificate of membership or insurance. In our opinion it is a reasonable conclusion that the new corporation intended by "assuming all liabilities" of the old corporation to assume the liabilities to the members of the old corporation as declared in the original certificates issued to the members thereof. The main object of the acts of 1927 herein above mentioned was to place such assessment companies under the direction and control of the director of trade and commerce in regard to the future conduct of its business. Under the facts as they appear in this case, the reorganized company had no power to arbitrarily nullify contracts made before the reorganization and impose restrictions as to liability in the new certificates which were not embraced in the old ones. As to those who became new members after the organization it could impose such conditions as it deemed best in their certificates subject to the approval of the director of trade and commerce but it had no power to nullify the contracts of the pre-existing members under the facts as shown.

In our opinion, the circuit court erred in holding that the new certificate of membership governed the rights

of the beneficiary of the assured and the judgment will therefore be reversed, and as the case was tried before the court without a jury, judgment will be entered in this court in favor of appellant and against appellee in the sum of $1,000 with interest at the rate of 5 per cent per annum from the first day of October, 1928, to the date of this judgment, and that execution issue therefor.

*Reversed and judgment here.*