Jessie Pitkin Williamson, Appellee, v. American Insurance Union, Inc., Appellant.

Gen. No. 38,547.

Opinion filed March 2, 1936.

GLICK & GOLDSTEIN and HENNING & BAKER, all of Chicago, for appellant; NATHAN GLICK, of counsel.

PAUL O'DONNELL, of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought suit to recover on a life insurance policy issued by defendant to Henry F. Williamson, her deceased husband, and upon trial had judgment for $3,325, from which defendant appeals. The case was heard by the trial judge on the complaint, answer and a motion by plaintiff to strike defendant's answer and for judgment on the pleadings, which motion was sustained, and the judgment followed.

The policy is dated October 1, 1931, and contains a provision that the risk of suicide within two years from that date is not assumed; the insured committed suicide May 19, 1933, or within two years from the policy date, and the question presented is whether this operates as a defense, plaintiff claiming that a prior insurance contract voids this provision.

The complaint alleged that on December 2, 1915, in pursuance to an application for membership, Henry F. Williamson became a member of a fraternal benefit society (not the defendant) hereafter called the Fraternal society. The application contained the following:

"I further warrant that no benefit whatever shall be demanded or claimed at my death should I commit suicide within two years after becoming a beneficial member."

June, 1931, a reinsurance agreement was effected between the Fraternal society and the defendant company. By this it was provided that the Fraternal society should deliver to the defendant all of its applications for insurance, together with reports of medical examinations, etc. Defendant agreed to reinsure each certificate or policy transferred, held by any member of the Fraternal society, provided that such reinsurance should not be effective until such member voluntarily transferred his policy in the Fraternal society and has received in lieu thereof a policy issued by

defendant company. There was also a provision that all members of the Fraternal Society who did not wish to transfer or exchange their policies for policies of insurance issued by defendant should be maintained "in a separate group, hereinafter designated as the Fraternal Group, and shall hereafter pay to the (defendant) company" such premiums or assessments as they were required to pay to the Fraternal society under the terms of the policies in the society. "Such premiums or assessments, so paid by members of the fraternal group, shall be used solely for the purpose of paying claims and liabilities now existing against the Society or hereafter arising on account of policies or certificates of the members of said group." Section 10 provided that, "it is distinctly understood and agreed that the obligations and liabilities of the Company to the members of the Society and to all persons holding claims or accounts of every kind and character against the Society shall be limited to the obligations and liabilities specifically assumed hereunder and shall be payable only out of the funds of the Society transferred in trust to the Company."

Williamson elected to accept a new policy of insurance in defendant company as provided for in the reinsurance agreement and signed an application which contained the statement that, in consideration of the waiver by the company of a medical examination the insured's original application for membership in the Fraternal society should be made a part of the policy issued to him by the defendant company October 1, 1931. The new policy was issued to him; it contained a provision, as follows:

"11. Risks Not Assumed.

If within two years following the date of this Policy, the Insured, whether sane or insane, shall die by his own hand or act, the limit of recovery hereunder shall be the reserve on this Policy. . . ."

The insured died by his own hand on May 19, 1933, which was less than two years from the date of the policy. Plaintiff says that the provision in the original application that no benefit shall be claimed should the insured commit suicide within two years after becoming a member, which limitation expired in 1917, and which application was made part of the new policy issued by the defendant company, is in direct conflict with the provision in the new policy eliminating the risk of suicide within two years after October 1, 1931. Plaintiff argues that these clauses cannot be reconciled and that one or both must be rejected.

It should be noted that defendant's policy is an entirely new policy of insurance. It is not a renewal or continuation of the Fraternal society policy. Defendant did not agree to assume the policies of the Fraternal society. The members of the society did not become policyholders in defendant company until they took affirmative action to this end. They might, if they wished, retain their status in the Fraternal society; and provision was made in the reinsurance contract to keep such members in a separate group, not connected with the defendant company.

Plaintiff has cited cases like *York v. Central Illinois Mut. Relief Ass'n,* 256 Ill. App. 8, where a fraternal insurance company reincorporated under a statute, the new company taking all the assets of the old fraternal company and assuming all its liabilities, and where all members of the old corporation *ipso facto* became members of the new corporation. In *Weil v. Federal Life Ins. Co.,* 182 Ill. App. 322, affirmed in 264 Ill. 425, it was held that the defendant company assumed and guaranteed the policies of the other company in accordance with their terms and conditions. In the instant case there was no assumption by defendant company of liability of the Fraternal society certificates, whose holders did not become policyholders in defendant corporation.

It is pointed out that the Fraternal society was a Fraternal Benefit Society, while defendant company is what is called a Legal Reserve Old Line insurance company. A policy in the defendant company gave greater rights and protection to an insured than was given by membership in the Fraternal society. The policy in defendant company was nonassessable; it was not subject to deduction due to prescribed or hazardous occupations; it provided for participation in dividends; it gave the insured the privilege of making loans and protected him by premium loans in case of failure to pay premiums on the due date. In all of these respects a policy in defendant company had great advantages over a policy in the Fraternal society.

Plaintiff stresses an interim certificate issued by defendant, purporting to state the rights of the parties between the time the insured applied for a new policy and the time when it was delivered to him. The interim certificate states that it ''protects the member in an amount equivalent to that provided under the terms and conditions now obtaining as to the old policy until the effective date of the new policy to be issued to him provided the original policy is now in force.'' Plaintiff argues that this certificate is evidence that the defense of suicide was barred as to the policy sued on to the same extent that it was barred under the Fraternal society policy or certificate. We do not so construe this certificate. It is conceded that if the insured had committed suicide while the interim certificate was in force and before the issuance of the new policy, the defense of suicide would be barred, but this certificate by its own express terms was effective only until the new policy was issued.

Was the suicide provision in the application of 1915, which limitation had expired in 1917, intended to be made a part of the policy issued by defendant in 1931? There are a number of provisions in the application of 1915 which, it is self-evident, could not become a

part of the new policy. In that application the insured agreed to conform to the ''Supreme Law of the Order now in force, or which may hereafter be adopted by the same.'' The old policy was subject to an increase in rates, and the constitution of the Fraternal society provided that if the insured should die while engaged in certain proscribed or hazardous occupations the amount of insurance recoverable would be reduced. It should be noted here that this latter provision is repugnant to the statutes of this State. Ch. 73, par. 376, subpar. 4, Ill. State Bar Stats. 1935. It also contained a provision that conviction of the insured of felony, treason, or a crime should work a forfeiture to all rights and benefits in the Fraternal society; death in consequence of or in violation of law was not assumed nor recoverable; the insured agreed not to engage in any military or naval service in time of war without the written permission from the society. Manifestly, none of these provisions in the old application became part of the new policy.

A reasonable construction of the provision that the old application shall be made part of the new policy is that it was solely for the purpose of providing the defendant with the statement by the insured in the old application as to his physical and mental condition in consideration of a waiver by defendant company of a medical examination. A provision in the new policy is as follows:

''This policy, together with the Application, a copy of which is attached hereto, contains and constitutes the entire contract between the parties hereto, based on the express representation that each and every statement and answer made by the Insured, or on his behalf, in said Application is full, complete and true, and that they are the only statements and answers upon which this contract is made, though in the ab-

sence of fraud they shall be deemed representations and not warranties.''

The representations in the application mean the representations as to the physical condition of the insured, and this provision tends to show that it was these representations in the application which were made part of the new policy.

The general rule in construing contracts of insurance is that the intent and meaning of the parties must be deduced from the contract, its subject matter and purpose, and the situation and circumstances of the parties when they made it, and that these considerations must prevail over the dry words of the instrument, inapt expressions and careless recitals therein, unless that intention runs counter to the plain sense of the binding words of the agreement. *United States Fidelity & Guaranty Co. v. Board of Com'rs*, 145 Fed. 144. *Gans v. Aetna Life Ins. Co.*, 214 N. Y. 326, presented a situation like that before us, plaintiff claiming that a limitation clause on suicide in a prior policy prevailed. It was held that the suicide clause in the later policy did not relate back to the date of the original contract, under which it became inoperative at the time of insured's death by suicide.

Plaintiff cites numerous cases supporting the proposition that where a contract of insurance contains inconsistent or ambiguous clauses, construction must be given most favorably to the insured or his beneficiary. *First Nat. Bank of Kansas City v. Hartford Fire Ins. Co.*, 95 U. S. 673, and many other cases. Undoubtedly this is the general rule, but there are an equal number of cases supporting the proposition that such contracts must be given a natural interpretation, looking to the other provisions of the contract and to its general object and scope, and that it cannot be presumed to have been within the intention of the

parties to reach an interpretation which would lead to an absurd and unreasonable conclusion, and any interpretation leading to such a conclusion must be abandoned and that adopted which would be more consistent with reason and probability. *United States Fidelity & Co. v. Board of Com'rs,* 145 Fed. 144; *L'Engle v. Scottish Union & National Fire Ins. Co.,* 48 Fla. 82; Williston on Contracts, vol. 2, sec. 620; May on Insurance (3rd ed.), sec. 174; Couch on Insurance, vol. 1, sec. 177. Couch says constructions must not be unnatural, forced or strictly technical, or sophistical.

The policy issued by defendant contained a provision that "After the Policy has been in force for two full years from the date of issue, it shall be incontestable except for non-payment of premiums." Plaintiff says, in effect, that although the insured committed suicide within two years from October 1, 1931, yet the defendant made no defense until the present suit, in which the complaint was filed February 19, 1935, and defendant's appearance on April 5, 1935, and its answer filed May 25, 1935, which was well after the two-year contestability limitation had expired. *Royal Circle v. Achterrath,* 204 Ill. 549, is cited in support. The opinion states that it has been held that an incontestable clause after a certain period applies to a case of the death of the insured by suicide, notwithstanding the policy contains another clause providing that death by suicide is not a risk which the company assumes. There is other language in the opinion which seems to support the position of plaintiff in this respect. However, it should be noted that in that case there was no time limit in the suicide clause and the suicide occurred after the expiration of the incontestable period. In the instant case both the incontestable and the suicide clauses contain definite time limitations of two years, and the suicide occurred prior to the expiration

of the incontestable period. Moreover, in the *Royal Circle* case suicide voided the policy and the defendant there was actually contesting the policy. In the instant case suicide does not void the policy but limits the amount of recovery to the reserve on the policy. *Mareck v. Mutual Reserve Fund Life Ass'n,* 62 Minn. 39, is also cited by plaintiff, but in that case the suicide occurred after the expiration of the incontestable period. *Powell v. Mutual Life Ins. Co.,* 313 Ill. 161, and *Ramsey v. Old Colony Life Ins. Co.,* 297 Ill. 592, cited by plaintiff, are not controlling. Those cases were treating of the defense of fraud, which would invalidate the policies, and it was held that such a defense was a contest within the operation of the incontestable clause.

We hold that raising the defense of suicide where there is a provision that the risk of suicide is not assumed, is not contesting the policy within the meaning of the incontestable clause, and that the incontestable clause creates a short statute of limitations, the purpose of which is to permit the insurer to ascertain the truth of the representations made in the application. In *North American Union v. Trenner,* 138 Ill. App. 586, where defendant offered the smaller sum due under the terms of the policy upon the suicide of the insured and denied liability for the full amount of the policy, it was held this was not contesting the validity of the policy, that defendant was doing only that which it was required to do by the terms of the policy, and that the incontestable clause did not apply. In *Baker v. Prudential Ins. Co.,* 279 Ill. App. 5, the policy covered the insured so long as he was an employee of the defendant; the insured died when, as defendant contended, he was no longer an employee; plaintiff presented the incontestable clause of the policy. We said that "the incontestable provision did not prevent the defendant insurance company from showing that the

policy was no longer in effect'' because the insured had been discharged before his death, and held that the incontestable clause was intended to prevent the defendant from contending that the policy was obtained by fraud or misrepresentation, or upon any other ground going to the original validity of the policy, citing a large number of cases. In the *Royal Circle* case, cited by plaintiff, it was held that the incontestable clause creates a short statute of limitations, ''giving the insurer a limited period for the purpose of testing the validity of the policy.'' See also *Mack v. Connecticut General Life Ins. Co.,* 12 F. (2d) 416, and many other cases.

The language in the policy involved in *Scales v. Jefferson Standard Life Ins. Co.,* 155 Tenn. 412, is identical with the clauses under consideration in the present policy. The court said, ''Upon both principle and authority, we think it clear that under this contract the incontestable clause is without application, but that the rights of the beneficiary are fixed by the suicide clause.'' And further, ''The policy before us was a contract to pay $5,000 on the death of the insured, unless from suicide within two years, and in that event the amount of the premiums only. A reliance upon the terms of this contract does not contest its validity, but assumes it.'' So also in *Moore v. Bankers' Credit Life Ins. Co.,* 223 Ala. 373, the facts are like those in the instant case. It was there contended that as there was a conflict between the suicide and incontestable clauses, the contract must be construed most strongly against the insurer and the incontestable clause must be held to prevail over the suicide clause. The court held that there was no conflict between these two clauses; that one is independent of the other. *Hearin v. Standard Life Ins. Co.,* 8 F. (2d) 202, contains some very apt language pertinent to the present case:

"There is only one construction of these two provisions possible. In the one case, the policy is incontestable after one year from its date for false representations or fraud in the application; in the other, the risk for suicide, if committed within one year, is not assumed. If a risk is not assumed, how can there be a liability? If there is no liability, why must there be a denial thereof before the expiration of the year?" The court held that the incontestable clause created a short statute of limitations during which time the company would investigate to determine whether it would contest the policy, and said:

"How can the insurer investigate whether the insured will commit suicide? He may take his life within a day or two prior to the expiration of the period of limitation, or the beneficiary may not advise the insurer of the death of the assured until after the expiration of the limitation, or so short a time before that the insurer cannot possibly make the necessary investigation within the period required. Still, if the contention of counsel for plaintiff is to be sustained, the insurer would be prevented from disputing its liability, though the policy in clear and unambiguous language states that 'death by self-destruction within one year from the date of the policy is a risk not assumed.' "

In the instant case defendant does not deny liability for the amount of the reserve provided for in said policy which, under the suicide clause, is the limit of recovery in such a case.

Plaintiff alleged that defendant, through its agents, after the execution and delivery of the policy in question, by its acquiescence in the construction placed on the policy by the insured and by direct statements construing said policy, declared the policy to mean that it was and should be construed as incontestable to the same extent as the policy issued by the Fraternal society, and that the clause entitled "Risks Not Assumed"

did not apply but that defendant did assume the risk that the insured might die by his own hand to the same extent as said risk had by a lapse of time been assumed by the terms of the application to the Fraternal society; that by reason of said statements of the defendant so construing the policy the insured was induced to and did believe that the policy issued by the defendant would be construed to be incontestable and that defendant assumed to insure the risk of suicide.

Defendant by its answer specifically and expressly denied all these allegations, thus raising a question of fact. Under such circumstances it was error for the trial court to sustain plaintiff's motion to strike defendant's answer and to give judgment for plaintiff on the pleadings. Where the facts are disputed the production of evidence is required to be passed upon by the court or jury as a question of fact.

Defendant argues that the effect of the motion to strike was to admit all allegations of fact in the answer properly pleaded, and therefore, as a matter of law judgment should be rendered for defendant on the pleadings. The motion to strike the answer was not like a demurrer to a declaration or complaint. The complaint alleged certain matters of fact, which were denied by the defendant, thus making an issue of fact to be determined by evidence.

For the reasons above indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

MATCHETT and O'CONNOR, JJ., concur.