Joseph Soucie for use of Donald Ziems, Minor, Appellee, v. Illinois Agricultural Mutual Insurance Company, Appellant.

Gen. No. 9,953.

Opinion filed July 20, 1944.

BURKE & SCHENK, of Joliet, for appellant.

JOSEPH BARBERA, of Chicago, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

In August 1940 appellant issued an automobile casualty insurance policy to Florence C. Soucie, covering liability of $5,000 to each person and total liability of $10,000 for one accident. Donald Ziems, a minor, recovered a judgment for $5,000 against Joseph Soucie, husband of the insured, on account of injuries received in an automobile accident, at about 4:30 o'clock, on the afternoon of August 8, 1941, in which Joseph Soucie was driving the insured's automobile with her consent. This is an appeal from a judgment of the circuit court of Will county against appellant for $5,000 in a garnishment proceeding which seeks to reach the proceeds of the insurance policy. Written interrogatories and answers thereto were filed, and the cause was heard by the court without a jury. The questions presented are whether the policy had lapsed for nonpayment of premium on or before it was due, and whether such lapse, if any, was waived by subsequent conduct of appellant.

The insurance policy is dated August 8, 1940, and provides for insurance ''commencing at 12:01 o'clock a. m., Central Standard Time, on the date herein speci-

fied, and expiring at 12:01 a. m. six (6) months from effective date unless renewed as provided herein." The policy further provides:

"Effective date: This policy is effective at 12:01 a. m., Central Standard Time Aug. 8, 1940 and shall remain in force until cancelled or terminated as provided in the policy.

Cash Premium: The cash premium paid is for insurance expiring at 12:01 o'clock a. m. six months from the effective date of policy. This policy shall remain in full force and effect for each successive six months period that the insured shall pay in advance such cash premium as may be required by the Board of Directors to renew the same. Should the Insured fail to pay in advance such cash premium as is required to renew the policy, the insurance shall no longer be in force and all cash premium paid by the Insured shall be considered as fully earned and the policy cancelled.

If the insured after failing to pay such cash premium in advance as is required by the Board of Directors to renew the policy, subsequently pays the same, such payment, if then accepted by the Company without payment of another policy fee, shall reinstate the policy and insurance for the balance of such six months' period in which the payment is accepted, at the end of which period such premium shall be considered as fully earned, but the reinstatement of such policy and insurance and the acceptance of such payment shall not render the Company liable for any loss or damage occurring after the expiration of the six months' period at the end of which such payment was due and prior to the acceptance of such payment by the Company."

The policy fee, the initial premium, and the February 1941, premium were paid. It is not controverted that 30 days and 5 days, respectively, before August 8, 1941, the insured received by mail premium notices of the premium for the third six months period, each con-

taining the statement: "Failure to pay your premium on or before the date due automatically cancels your policy." The 5 days notice also contained, on the back thereof, the following: "Any Semi-Annual Renewal Premium paid by the Insured after the same is due, when accepted by the Company is accepted with the understanding on the part of both Insured and Company that the Company is not liable under any of the provisions of the insurance policy for accidents occurring during the period intervening between the time such Renewal Premium is due, as provided in policy, and the time when such delinquent Renewal Premium is received and accepted by the Company."

Attached to the 30 days notice was a check form for remittance of the premium, for $13.40, payable to appellant, to be dated, signed, and filled in with the name and location of the bank on which drawn. The form bore the policy number, the figures "8/8" and the words: "In payment of renewal premium." Appellant received the check by mail, at its office in the City of Chicago, on August 11, 1941. The check is dated "Aug. 7th, 1941," is signed "Joe Soucie," and was drawn on the First State Bank of Beecher, Illinois. The premium receipt returned to the insured states, on the back thereof, "Payment of this premium receipted for, if made on or before the date due as shown on reverse side keeps your policy in continuous effect, and if made after that date reinstates the policy on the date paid as provided in the policy." On the front side of the receipt are the following words and figures: "Date Paid 8/11/41 Amount $13.40 Date Due 8/8/41." The receipt for the premium paid in February 1941 is similar in form.

The insured and her husband testified that on August 7, 1941 she called his attention to the insurance premium, and that at supper time on that day he signed the check and placed it in an envelope directed to appellant at Chicago, Illinois. They and Mr. and Mrs.

Emil Boicken, their friends for many years, testified that about 8 o'clock that evening Mr. and Mrs. Boicken came to the Soucie home to see about combining Mr. Soucie's oats; that Mr. Soucie said he had to go to Beecher to mail a letter to appellant and that Mrs. Boicken said she would mail it at Crete as they went home, and took the letter with her when they left. Mr. and Mrs. Boicken also testified that they stopped at Crete and that Mrs. Boicken mailed the letter at the post office. It also appears from the testimony of these witnesses that the Boickens visited the Soucies on the succeeding evening, August 8, at about 8 o'clock, and there learned of the accident to Donald Ziems.

On August 12, four days after the accident, Mr. and Mrs. Boicken each signed a statement at their home, which they testified was prepared by a stranger to them, and was read to them by him before they signed it, after which, and not before, he told them he was from the appellant insurance company. It appears from the testimony of Mr. Soucie that he had previously told the representative of the insurance company that he had given the letter containing the premium check to some friends on August 7 to mail at Crete. The statement signed by the Boickens recites that they were at the Soucie farm on Wednesday evening August 6 ("6" written over "7"), and Friday evening August 8, and that they did not know for sure whether they were over there on Thursday, August 7, or not; that the Soucies did not give them an envelope or anything to mail on either of the evenings; that there was no mention made that they take any letters and mail them for the Soucies; and that there was nothing said about any insurance premium. More than a year thereafter, in the latter part of 1942, prior to the trial, the statement was read to them, recital by recital, in the office of appellant's counsel. They reaffirmed each of the recitals in the statement, and upon being asked if there was anything

further they, wanted to add or anything to say about it they said there was not, and declined to sign another statement under oath. On the trial they testified that the statement signed by them was not true, and that they signed it because they did not want to become involved. It appears from their testimony that when they signed the statement, they had not then seen Mr. or Mrs. Soucie since the evening of August 8, and that from the time appellant's agent came to their home until after the statement was signed, they did not know that he represented an insurance company, and that they did not confer together about any possibility of their becoming involved. Under these circumstances, it is somewhat difficult to see how, at that time, they could both have anticipated that signing the statement would keep them from becoming involved.

The envelope in which the check was mailed bears the canceling stamp of the Crete post office, post marked: ''Crete, Ill. Aug. 9, 1941, (hour illegible), a. m.'' which was Saturday, and it was delivered to appellant in Chicago on Monday, August 11. Crete is south of Chicago. The postmistress at Crete testified that there are four trains leaving Crete daily with outbound mail; that the 6:30 a. m. train and the 12:30 p. m. train are north bound, directly to Chicago; that the 9:30 a. m. train and the 2:30 p. m. train are south bound, and mail on them for Chicago is picked up at Momence, Illinois, by a north bound train and taken to Chicago; that the post office opens at 7 a. m. and closes at 5:30 p. m.; that a letter mailed at the post office on any day, after 2:30 p. m. and before the closing hour of 5:30 p. m. would be post marked 6:30 a. m. the following day; that a letter mailed after 5:30 p. m. on August 7 would be post marked 9:30 a. m. August 8; that it would leave Crete at 9:30 a. m. on the south bound train and reach Chicago on the morning of August 9; that a letter posted after 5:30 p. m. on August 8 would be post marked 9:30 a. m. August 9 and

would leave Crete on the 9:30 a. m. south bound train, reaching Chicago on the morning of August 10, and that when the 10th of the month fell on Sunday, delivery could not be made in Chicago until the 11th. The testimony of appellees witnesses shows that the letter was mailed after 5:30 p. m. coupled with the testimony of the postmistress, this shows that the illegible hour of mailing in the post mark was "9:30," which is not questioned by appellee.

Taking into consideration all the testimony, the conclusion is inescapable that the letter containing the check was mailed at the post office in Crete after 5:30 p. m. on August 8 after the accident, regardless of who mailed it.

Appellee's claim that the policy was in force at the time of the accident, is based on the well known and often repeated general rule expressed in *Ewing v. Bailey,* 5 Ill. 420, 421, where the court said in the opinion: "The proper mode of computing time, where an act is to be performed within a particular period from or after a specified day, is to exclude the day named, and include the day on which the act is to be done. For example: a promissory note executed on the first day of the month, and payable in twenty days from date, falls due on the twenty-first of the month; in reckoning the time, the day of the date is excluded, and the day on which the maker is required to pay is included."

Nobody could seriously contend that the general rule invoked by appellee is applicable where the instrument sued on provides, expressly, or by necessary implication, that the first day is to be included. This doctrine has been applied to the computation of time under particular statutes, notwithstanding the general statutory provision (Ill. Rev. Stat. 1943, ch. 131, par. 1, subd. 11 [Jones Ill. Stats. Ann. 27.13, subd. 11]) similar to the rule above quoted. (*People ex rel. Blachly v. Coffin,* 279 Ill. 401, 409). The parties to

an insurance contract are at liberty to make any stipulations they choose which are not against public policy or which do not contravene some positive rule of law. (*Blume v. Pittsburgh Life & Trust Co.*, 183 Ill. App. 295.) In the absence of fraud or mistake, such contracts are binding on both parties (*Rose v. Mutual Life Ins. Co. of New York*, 240 Ill. 45, 53–54), and it is the duty of the courts to construe and enforce them as made. (*Blume v. Pittsburgh Life & Trust Co.*, 263 Ill. 160, 164.) In the case at bar, the effective date of the policy is not merely August 8, 1940, but by its express provisions, is 12:01 a. m. of that day, which necessarily and manifestly makes the policy include the whole of that day except the first minute thereof. If August 8, 1940, be excluded in the computation of the first six months period, it would necessarily follow that the insured was not covered for the first day of her policy, which would contravene its express provisions. Cases under the general rule, cited by appellee, where an act was to be performed within a certain period from and after a specified day, without there being anything in the instrument to indicate any particular hour in the day as the beginning of the period, have no application here. If appellee's theory be followed out, the end of the first six months, would be February 9. Then, by excluding the first day of each renewal period, the second six months period would expire August 10, the third period would expire February 11, the fourth period would expire August 12, and so on, which leads to an absurdity. On the other hand, by following the express provisions of the policy, the insured had a full six months coverage beginning at 12:01 a. m. on the 8th of the month at each six months anniversary of the effective date of the policy, for which the premium had been paid. Our conclusion is that the policy lapsed at 12:01 a. m. August 8, 1941, and was not in force at the time of the accident. The payment of the premium after it was delinquent, and

the acceptance thereof, merely reinstated the policy according to its terms. (*Froehler v. North American Life Ins. Co. of Chicago,* 374 Ill. 17, 23.)

The fact that appellant accepted the premium on August 11, and noted August 8, 1941 on its record in its office as the "Effective Date," does not constitute a waiver of the lapse. Such an entry was obviously erroneous. It is not shown or claimed that the insured had any knowledge of the fact that appellant carried the effective date on its record as August 8, or that she ever knew of previous similar entries when payment was made after the 8th of the month. The policy, and the 5 days notice sent to her, each contained the provisions above quoted as to how delinquent premiums would be applied when accepted, and that accidents occurring between the due date and the acceptance of such delinquent premiums, were not covered. The insured testified that she had the policy and was conversant with its provisions prior to August 8, 1941, and had the terms of the contract in mind when she spoke to her husband with reference to the premium. There is no ambiguity in the language of the policy as to the effective date, or as to the effect of the payment and acceptance of delinquent premiums. The insured, being conversant with the terms of the policy, and being again warned thereof by the 5 days premium notice, neither she, nor appellee, is in any position to claim there was any waiver by appellant's acceptance of the delinquent premium on August 11, or by any entries on its records of which she had no knowledge. She could not have been misled by the language on the February 1941 receipt, as showing the due date of premiums as the 8th of the month, because, according to her testimony the check was mailed on August 7; and furthermore, if she had believed she had all of the 8th in which to remit, the 5 days premium notice expressly informed her to the contrary. None of these things could have

lulled her into a false sense of security that a lapse would not be enforced by appellant.

When a policy of insurance contains no provision as to how delinquent premiums are to be applied when paid, and no limitation or exception as to liability under such circumstances, the general rule is that repeated acceptances of premiums after their due date estops an insurer from taking advantage of a failure to pay a subsequent premium on or before the due date, because such conduct tends to induce the insured to believe that a forfeiture on that account will not be claimed. (*Baxter v. Metropolitan Life Ins. Co.*, 318 Ill. 369, 373.) But, where the policy, as in this case, specifically, and without any ambiguity, provides the exact manner in which delinquent premiums will be applied when paid, without any liability on the part of the insurer during the delinquency, and the insured knows and is also notified of such provisions before the due date of the premium, it is manifest that there can be no ground to claim that acceptance of delinquent premiums after the due date is a waiver of any of the policy provisions.

Because of·our conclusions that the policy lapsed at 12:01 a. m. August 8, 1941, prior to the accident, and that there was no waiver of the lapse by appellant, it is unnecessary to consider whether posting the letter constituted payment of the premium at the time of posting. The judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*