MARY MARGARET BRADY, Plaintiff-Counterdefendant-Appellant, *v.* HIGH-WAY COMMISSIONER OF PENN TOWNSHIP, STARK COUNTY, Defendant-Third-Party Plaintiff-Counterplaintiff-Appellee.—(DONALD K. BRADY, Third-Party Defendant-Counterdefendant-Appellee, *v.* GREAT AMERICAN INSURANCE COMPANY, Counterdefendant-Appellee.)

(No. 73-247;

Third District—January 20, 1975.

*Rehearing denied February 14, 1975.*

Boyle & Goldsmith, of Hennepin (Linn C. Goldsmith and George S. Skinner, of counsel), for appellant.

Andrews & Andrews, of Kewanee, and Rennick, Rennick & Rennick, of Toulon (Harper Andrews, of counsel), for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the Circuit Court of Stark County. The original action in this cause was commenced when Mary Margaret Brady as plaintiff brought a suit in negligence for personal injuries against the highway commissioner of Penn Township, Stark County, Illinois (hereinafter referred to as the "Commissioner"). The third-party action for indemnification subsequently filed against a Donald K. Brady by the Commissioner does not present any questions on this appeal.

To obviate the fact that she had failed to comply with the limitation and notice provisions of sections 8—101 and 8—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, pars. 8—101 and 8—102) the plaintiff alleged that the Commissioner was covered with respect to the injury complained of to the extent of her damages, by a comprehensive general liability insurance policy issued by the Great American Insurance Company (hereinafter referred to as the "Great American"). This allegation of the plaintiff was predicated on the *Housewright* and *Fanio* cases, which hold that where a local public entity has contracted for insurance against loss or liability sought to be imposed against it, the notice and limitation provisions of the Tort Immunity Act are deemed waived. See *Housewright v. City of LaHarpe*, 51 Ill.2d 357, 282 N.E.2d 437; *Fanio v. John W. Breslin Co.*, 51 Ill.2d 366, 282 N.E.2d 443.

The Commissioner filed a complaint for declaratory judgment against the plaintiff and also against Donald K. Brady and Great American in order to determine whether the policy of insurance did in fact afford coverage. Thereafter, the plaintiff filed a motion for summary judgment

on the complaint for declaratory judgment, wherein she asked the trial court to find that the policy in question did in fact afford the coverage as she had alleged. Great American, after answering the complaint for declaratory judgment, then in turn filed a motion for summary judgment in which it was requested that the trial court declare that the policy did not afford the requisite coverage.

After hearing the trial court entered an order entitled "Declaratory Judgment," in which it was declared that the policy of insurance in question did not afford coverage with respect to the injury complained of, and the order further dismissed the plaintiff's personal injury action with prejudice on the ground that in absence of such coverage the action was barred by failure to comply with sections 8—101 and 8—102 of the Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, pars. 8—101 and 8—102). It is from this order of the trial court that the plaintiff appeals.

The pertinent facts which resulted in the filing of the pleadings which we have documented are as follows: The plaintiff on August 19, 1970, while a passenger in an automobile driven by Donald K. Brady (whom she subsequently married), was injured in an automobile accident on a township road located in Penn Township, Stark County. The plaintiff alleged various acts of negligence on the part of the Commissioner, *inter alia*, failure to maintain and repair the road, failure to post any guide, direction or warning signs and violations of both a statutory and common-law duty to provide traffic warning signs as to a dangerous condition.

The Commissioner admitted that the roads in question were under his supervision and control and in his complaint for declaratory judgment alleged the issuance of a policy of insurance by Great American and attached the same to his complaint as an exhibit. He further alleged that when the insurance was originally contracted for in 1959 and on subsequent renewal dates he requested "full coverage insurance."

Without entering into an undue recital of facts, it suffices to say that there was in existence a valid general comprehensive liability policy of insurance issued to the Commissioner by Great American. We must further note that Great American, in defending against the claim of the plaintiff, did so under a "reservation of rights" on the basis that no premium charges had ever been made for insurance coverage in regard to streets, roads or highway hazards. On October 19, 1972 (a date clearly subsequent to the accident and the filing of a complaint by the plaintiff), Great American mailed to the Commissioner the following exclusionary endorsement:

> "This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY

INSURANCE

G301
EXCLUSION

(All Hazards in Connection with
Designated Premises)
Streets and Sidewalks

It is agreed that the insurance does not apply to bodily injury or property damage arising out of

(a) the ownership, maintenance or use of the premises designated in this endorsement or of any property located thereon;

(b) operations on such premises or elsewhere which are necessary or incidental to the ownership, maintenance or use of such premises; or

(c) goods or products manufactured at or distributed from such premises.

Description and Location of premises

It is agreed that this insurance does not apply to bodily injury or property damage arising out of any condition in or the existence of any such Highways, Roads, Streets, Sidewalks, Culverts or Bridges, except such bodily injury or property damage occurring while actual maintenance or repair operations are in progress by the insured."

It should be noted that this proferred endorsement was at no time a part of or attached to the policy of insurance in question.

We will set forth a recital of additional facts as they become pertinent to the issue to be determined in this appeal. Reduced to its simplest form, the precise issue presented is whether the policy of insurance issued by Great American to the Commissioner afforded coverage with respect to the injury complained of by the plaintiff.

■■ We are cognizant of the general rule that whether or not an insurance policy covers certain liability, such determination is normally made by referring to the language of the policy; however, if the language of the insurance contract is ambiguous and the intention of the parties does not clearly appear therefrom, in ascertaining such intention the court may take other matters into consideration, such as the subject matter of the contract, the facts and circumstances attending its execution, the situation of the parties and the predominant purpose of the contract

which ordinarily is to provide indemnity. See 22 Ill. L. & Pr. *Insurance* § 143, at 182-84 (1956).

In the instant case it can only be concluded that not only the insurance policy itself but also its execution and issuance present a situation that is indeed fraught with ambiguity. The policy is a document consisting of 10 pages which has imprinted thereon finely printed material setting forth an array of other types of insurance, definitions, exclusions, hazards, and conditions. A mere reading of the policy makes it abundantly clear that a layman such as the Commissioner would find it extremely difficult if not impossible to interpret and decipher its meaning and intent. We find from the record that it was incontrovertible that the Commissioner when he originally contracted for liability insurance as well as on subsequent renewals requested that a policy be issued which afforded "full coverage" for Penn Township, its elected officials and agents. We further note from the record that even the insurer, Great American, was of the opinion that the policy as originally issued in the year 1959 and subsequently renewed each year through the year 1972, did in fact provide "full coverage insurance." Had such not been the case then there would have been no necessity for Great American to insist upon the attachment of an exclusionary endorsement to a successor policy issued to the Commissioner on March 23, 1973.

Exclusions in an insurance policy have relevance only when there is coverage; an exclusion, in insurance parlance, serves purpose of taking out persons or events otherwise included within defined scope of coverage. (*Hartford Accident & Indemnity Co. v. Case Foundation Co.,* 10 Ill. App.3d 115, 294 N.E.2d 7.) The only logical explanation for the insistence by Great American that the exclusionary endorsement be attached to the policy is that without it the injury suffered by the plaintiff fell within the ambit of the policy as originally written. It may well be that a higher premium should have been paid to Great American; however, the Commissioner paid what was requested and was under no duty or obligation to authenticate the correctness of the charges for the insurance.

Our opinion in this appeal is predicated upon the theory that from the record the Commissioner intended to have full coverage (which would have covered the injury suffered by the plaintiff) and that it was his understanding that the policy afforded such coverage; and that Great American by its actions indicated that it also interpreted the policy as providing such coverage.

■■■ So far as an insurer is concerned, a policy is to be strictly construed against it, the reason for the rule being that it is the insurer who drafted the policy, with experts doing so for it, and the insured must take the

policy as written. (*Manchester Insurance & Indemnity Co. v. Universal Underwriters Insurance Co.*, 5 Ill.App.3d 847, 285 N.E.2d 185.) Also, the construction placed on a policy by a party as shown by his conduct and statements is the best evidence of the meaning thereof. (*United States Casualty Co. v. Crown Novelty Co.*, 195 Ill.App. 267.) Following these basic rules, we can only conclude that our theory is sound in that both parties intended that the policy should afford full coverage as they so interpreted it.

■■ It is therefore directed that the order of the trial court declaring that said policy did not afford coverage be reversed and an order be entered declaring that the policy of insurance did effect coverage with respect to the injury suffered by the plaintiff and that further, the personal injury action filed by the plaintiff be reinstated for further proceedings thereon.

Reversed and remanded.

STOUDER and DIXON, JJ., concur.