NANCY NABOR, Adm'r with Will Annexed of the Estate of Stephen Sniderman, Deceased, Plaintiff-Appellee, *v.* OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant-Appellant.

First District (4th Division)   No. 79-256

Opinion filed November 8, 1979.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman, Ellen J. Kerschner, and Ernest W. Irons, of counsel), for appellant.

Elsie G. Holzwarth, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant insurer when sued on a policy of life insurance raised the affirmative defenses of misrepresentation and suicide. Since the insured died on the second anniversary date, the court ruled that the insurer was barred by the two-year provision of incontestability clause and the suicide clause from raising these defenses and awarded judgment for the plaintiff. It awarded 6 percent interest from the date of death, September 15, 1977, although the statute increasing the amount of interest to 6 percent became effective on October 1, 1977. We modify the award of interest and affirm.

The material facts are few and undisputed. The insurer, Occidental Life Insurance Company of California, issued an annual renewable level term life insurance policy on the life of Stephen P. Sniderman, an Illinois resident. The date of issue and the policy date were September 15, 1975. The insured died on September 15, 1977, the second anniversary date. ■■ In compliance with statute (Ill. Rev. Stat. 1975, ch. 73, par. 836(1)(c)),[1] the policy contained the following provision:

"INCONTESTABILITY—This policy shall be incontestable after it has been in force during the lifetime of the Insured for two years from its date of issue, except for non-payment of premiums. This provision shall not apply to any rider providing benefits for disability or providing additional insurance specifically for death by accident."

It also provided that:

"SUICIDE—If the Insured dies by suicide, while sane or insane, within two years from the date of issue of this policy, the liability of the Company shall be limited to the amount of the premiums paid.

POLICY DATE—The policy date shall be used to determine premium due dates, policy anniversaries and policy years.

TERM PERIOD FOR ANNUAL RENEWABLE LEVEL TERM LIFE INSURANCE—If this policy is in force as annual renewable level term life insurance, the term period of this policy shall begin on the policy date and shall be a period of one year. Each renewal shall be for an additional term period

---

[1] Normally, insurance policies are governed by the law in force at the time of issuance. 12 Appleman, Insurance Law and Practice §7041 (1943).

of one year. No term period shall include the policy anniversary at the end of the period. This policy shall terminate at the end of each term period, subject to the renewal provisions.

PREMIUMS—Premiums are payable in advance from the policy date during the life of the Insured to the end of the term period. If a part of the premium ceases to be payable under the provisions of an attached rider, the premium shall then be reduced accordingly. The mode of premium payment may be changed on any policy anniversary to any other mode for which a premium is shown in the policy data. All premiums are payable at the Home Office of the Company or to an authorized agent or cashier of the Company, but only in exchange for an official receipt signed by the President or Secretary and countersigned by the person receiving the payment. If any premium remains unpaid after the grace period, this policy shall terminate."

The insurer has contended that by applying section 1.11 of "An Act * * * in relation to the construction of the statutes" (Ill. Rev. Stat. 1977, ch. 131, par. 1.11), which provides that a period of time is computed by excluding the first day and including the last, the two-year period must be computed by excluding the first day and including the last and that the policy term period would thus not have expired until September 15, 1977. The trial court disagreed and ruled that the defenses of suicide and misrepresentation were barred and entered judgment on the policy. It also ruled that the insured was entitled to 6 percent interest from the date of death.

## I.

It is well established, and undisputed by the parties, that a life insurer may be able to raise the defenses of misrepresentation and suicide if so provided in the policy, subject to any limitation established either by the policy or by statute. Equally, the parties do not contend that the policy provisions here do not control. Accordingly, we must look at the policy to determine whether these defenses are available to the insurer.

The insurer, relying on *O'Rourke v. Prudential Insurance Co. of America* (1938), 294 Ill. App. 30, 13 N.E.2d 287, *appeal denied*, contends that section 1.11 (Ill. Rev. Stat. 1977, ch. 131, par. 1.11) is applicable and that the two-year period provided in the incontestability and suicide clauses included September 15, 1977. *O'Rourke*, however, does not support that position, but rather supports the plaintiff. In *O'Rourke*, the policy provided for recovery "upon receipt of due proof of the death of the insured within ten years from the date of this policy, while it is in force." The court pointed out that such provisions had been construed in

contrary ways by various courts, thus indicating that the language was ambiguous. It then ruled that under those circumstances it was required to construe the policy in terms most favorable to the insured and against the company; this meant that under the facts of the particular case, the court was required to adopt the common rule of computing time that excludes the day named and includes the day on which the act is to be done. Were we to follow the rule of liberal construction applied in *O'Rourke*, we would be required to find coverage on the ground that since two reasonable constructions are possible, we must apply that construction which would permit recovery.

■■ Illinois, like most States, does construe a policy most favorably to the insured where two reasonable constructions are possible (*Home & Automobile Insurance Co. v. Scharli* (1973), 10 Ill. App. 3d 133, 293 N.E.2d 914; *Leakakos Construction Co. v. American Surety Co.* (1972), 8 Ill. App. 3d 842, 291 N.E.2d 176, *appeal denied* (1973), 53 Ill. 2d 606), since the insurer is the drafter of the language, with the help of its experts. (*Brady v. Highway Commissioner* (1975), 24 Ill. App. 3d 972, 322 N.E.2d 236; *Great Central Insurance Co. v. Bennett* (1976), 40 Ill. App. 3d 165, 351 N.E.2d 582, *appeal denied* (1976), 64 Ill. 2d 596.) This rule is not applied, however, where the ambiguous phrase is one required by statute, and thus not the product of the insurer's draftsmanship but rather that of legislative enactment. *Bronson v. Washington National Insurance Co.* (1965), 59 Ill. App. 2d 253, 207 N.E.2d 172.

■■■ The insurer, here, contends that both the incontestability clause and the suicide clause are required by sections 224(1)(c) and 333(10), (11) of the Insurance Code (Ill. Rev. Stat. 1975, ch. 73, pars. 836(1)(c), 945(10), (11)). The incontestability clause is required by section 224(1)(c) (Ill. Rev. Stat. 1975, ch. 73, par. 836(1)(c)), which provides that a life insurance policy must contain a provision rendering it incontestable after it has been in force for a stipulated time not more than two years from its date. But the suicide clause is not required by this provision. Incontestability clauses and suicide clauses are separate and distinct and the former does not control the latter (*Williamson v. American Insurance Union, Inc.* (1936), 284 Ill. App. 150, 1 N.E.2d 541; Annot., 37 A.L.R.3d 337 *et seq.* (1971)); raising the defense of suicide is not contesting the policy within the meaning of the incontestability clause since the insured is not contending that the policy is void but is recognizing its validity and relying on a defense set forth in the policy. (*Williamson v. American Insurance Union, Inc.* (1936), 284 Ill. App. 150, 1 N.E.2d 541.) Neither section 333(10) nor section 333(11) is applicable, since they apply only to mutual benefit associations which this insurer is not.

Nevertheless, it is not necessary for us to apply the doctrine of liberal construction to the interpretation of either clause since we find that it is

clear from the policy that the parties never intended in computing a policy year to include the anniversary date. While the rule set forth in section 1.11 of "An Act * * * in relation to the construction of the statutes" (Ill. Rev. Stat. 1977, ch. 131, par. 1.11) is a general rule as to the computation of time, it is not binding and applicable in all situations. In *Soucie ex rel. Ziems v. Illinois Agricultural Mutual Insurance Co.* (1944), 323 Ill. App. 456, 56 N.E.2d 55, the court, in holding that a policy issued on August 8, 1940, was not in force on August 8, 1941, refused to apply the statute, remarking at 323 Ill. App. 456, 462-63, 56 N.E.2d 55, 58-59:

> "Nobody could seriously contend that the general rule invoked by appellee is applicable where the instrument sued on provides, expressly, or by necessary implication, that the first day is to be included. This doctrine has been applied to the computation of time under particular statutes, notwithstanding the general statutory provision (Ill. Rev. Stat. 1943, ch. 131, par. 1, subd. 11 [Jones Ill. Stats. Ann. 27.13, subd. 11]) similar to the rule above quoted. (*People ex rel. Blachly v. Coffin*, 279 Ill. 401, 409). The parties to an insurance contract are at liberty to make any stipulations they choose which are not against public policy or which do not contravene some positive rule of law. (*Blume v. Pittsburgh Life & Trust Co.*, 183 Ill. App. 295.) In the absence of fraud or mistake, such contracts are binding on both parties (*Rose v. Mutual Life Ins. Co. of New York*, 240 Ill. 45, 53-54), and it is the duty of the courts to construe and enforce them as made. (*Blume v. Pittsburgh Life & Trust Co.*, 263 Ill. 160, 164.) In the case at bar, the effective date of the policy is not merely August 8, 1940, but by its express provisions, is 12:01 a.m. of that day, which necessarily and manifestly makes the policy include the whole of that day except the first minute thereof. If August 8, 1940, be excluded in the computation of the first six months period, it would necessarily follow that the insured was not covered for the first day of her policy, which would contravene its express provisions. Cases under the general rule, cited by appellee, where an act was to be performed within a certain period from and after a specified day, without there being anything in the instrument to indicate any particular hour in the day as the beginning of the period, have no application here. If appellee's theory be followed out, the end of the first six months, would be February 9. Then, by excluding the first day of each renewal period, the second six months period would expire August 10, the third period would expire February 11, the fourth period would expire August 12, and so on, which leads to an absurdity. On the other hand, by following the express provisions of the policy, the insured had a full six months coverage beginning at 12:01 a.m. on the 8th of the month at each six months

anniversary of the effective date of the policy, for which the premium had been paid. Our conclusion is that the policy lapsed at 12:01 a.m. August 8, 1941, and was not in force at the time of the accident."

■■ The policy in the present case does not contain a provision stating that the policy began at 12:01 a.m. But it does contain provisions clearly stating that the policy date (*i.e.*, September 15, 1975), determined the policy anniversaries; that the term period of the policy began on the policy date and "no term period shall include the policy anniversary at the end of the period. This policy shall terminate at the end of each term period * * *." Construing the policy as a whole, as we must (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873; *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491), it is clear that applying the clear and express language of the policy, the policy year was not to be computed according to the general rule set forth in the Illinois statute but as including the first day. Accordingly, the period of contestability expired at the end of September 14, 1977, and, since the policy had been in force for more than two years when the insured's death occurred, and since the insured's alleged suicide did not occur within two years from the date of issue, neither the defense of misrepresentation nor that of suicide can be raised.

Because the policy clearly provides for the computation of the policy period as including the first day, we need not decide whether the general statutorily established rule of computation should be applied if such a provision, or a provision such as that found in *Soucie*, were not in the policy. We are aware, however, of the many cases cited by the plaintiff where the courts have included the day of issue or first day of the policy period in computing the incontestability or suicide period. (*Aetna Life & Casualty Co. v. Thorn* (Fla. App. 1975), 315 So. 2d 219; *Prudential Insurance Co. v. Rhodriquez* (Fla. App. 1973), 285 So. 2d 689; *Acme Life Insurance Co. v. White* (Tex. Civ. App. 1936), 99 S.W.2d 1059, *writ ref'd*; *Pacific Mutual Life Insurance Co. v. Alsop* (1922), 191 Ind. 638, 134 N.E. 290; *Meridian Life Insurance Co. v. Milam* (1916), 172 Ky. 75, 188 S.W. 879; and see *Moore v. Industrial Life Insurance Co.* (Tex. Civ. App. 1977), 549 S.W.2d 47, *writ ref'd, n.r.e.*) As the plaintiff stated at oral argument, if the insurer, aware of this widespread interpretation, did not wish it to be applied, it should clearly have so provided in the policy.[2]

II.

Section 2 of "An Act in relation to the rate of interest * * *" (Ill. Rev. Stat. 1977, ch. 74, par. 2) provides that interest on written contracts shall be awarded at the rate of 5 percent. Section 224(1)(i) of the Insurance

---

[2] The issue whether 224(1)(c) (Ill. Rev. Stat. 1977, ch. 73, par. 836(1)(c)), would permit such a clause is, of course, not before us. In this case since the policy was at least as liberal as the clauses required by statute, it was not necessary for us to construe the statute.

Code of 1937 (Ill. Rev. Stat. 1977, ch. 73, par. 836(1)(i)) provides that as to policies issued after July 1973, interest shall accrue on the policy proceeds from the date of death at the rate of 6 percent. The specific statute relating to the rate of interest on insurance proceeds controls over the general statute as to the rate of interest. *United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 380 N.E.2d 909; *Karnes v. Board of Directors* (1976), 41 Ill. App. 3d 1015, 355 N.E.2d 191; *In re Estate of Gubala* (1967), 81 Ill. App. 2d 378, 225 N.E.2d 646, *denied sub nom. Rojek v. Wujastyk* (1967), 36 Ill. 2d 632; *Board of Education 33 v. City of West Chicago* (1965), 55 Ill. App. 2d 401, 205 N.E.2d 63.

■■ The insurer contends, however, that section 224(1)(i) of the Insurance Code of 1937 is inapplicable because it did not become effective until October 1, 1977, two weeks after the death of the insured and the statute contained no language which would indicate that it would be applied retrospectively. We find the case of *Firemen's Fund Insurance Co. v. Western Refrigerating Co.* (1896), 162 Ill. 322, 44 N.E. 746 to be controlling. That case held that where the statute as to the rate of interest provided for one rate up to one date and a different rate after that date, the insured would be awarded interest at the first rate up to the date the amendment became effective and at the other rate thereafter. The court held that the parties' rights with respect to interest were governed by statute which might be changed at any time at the pleasure of the legislature without impairing the contract or affecting any vested rights, and that applying the amendment to the interest accruing after the effective date of the amendment, although the loss occurred before, was in no sense giving a retrospective effect to the statute. See also *Chicago, Rock Island & Pacific R.R. Co. v. Chicago Burlington & Quincy R.R. Co.* (N.D. Ill. 1972), 55 F.R.D. 209.

It follows, therefore, that the court properly held that the insured was entitled to interest at the rate of 6 percent per annum from October 1, 1977. However, since section 224(1)(i) of the Insurance Code of 1937 was not effective until October 1, 1977, we agree with the insurer that from September 15, 1977, through September 30, 1977, interest could only be awarded at the rate of 5 percent.

Accordingly, we modify the trial court's award to read $100,000 plus interest at the rate of 5 percent on that amount from September 15, 1977, through September 30, 1977, and at the rate of 6 percent from October 1, 1977, until November 17, 1978, the date of the initial judgment, plus statutory interest on the total judgment from the date entered and, as modified, affirm.

Affirmed.

JIGANTI, P. J., and JOHNSON, J., concur.