Carrie M. Cox, Appellee, v. The Equitable Life Assurance Society of the United States, Appellant.

Gen. No. 10,200.

Opinion filed December 29, 1947. Rehearing denied February 3, 1948. Released for publication February 3, 1948.

LATHROP, BROWN & CONNOLLY and THOMAS & DAVIS, all of Rockford, for appellant; ROY H. BROWN, CHARLES H. DAVIS, both of Rockford, and HENRY H. CALDWELL, of Chicago, of counsel.

RAPHAEL E. YALDEN, of Rockford, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Carrie M. Cox, the plaintiff, widow of the deceased, Fred W. Cox, on November 28, 1945, began her action in the circuit court of Winnebago county upon a policy of insurance delivered to her husband by the defend-

ant, The Equitable Life Assurance Company. The face value of the policy was $1,842. The complaint alleges that premium payments were duly made; that the policy was delivered to Fred W. Cox; that he died on August 1, 1945; that the plaintiff, Carrie M. Cox, was the wife of Fred W. Cox, and the sole beneficiary under said policy; that the deceased and the plaintiff performed all of the conditions of the policy, which were in full force and effect at the time of the death of Fred W. Cox; that the defendant has refused to pay the amount due on the policy. The complaint concludes with a prayer for judgment.

The defendant filed its answer and put in issue the allegations of the complaint and raises the defense that the issuance and delivery of the policy were obtained as a result of the fraud and circumvention of Fred W. Cox, in making false and untrue answers to material questions in the application of the policy, which was a part of the supposed contract of insurance, and that the deceased was not in good health at the time of payment of the first premium on the policy.

The plaintiff filed a reply in which she denies that the policy was issued, and delivered as a result of the fraud of Fred W. Cox; denies that Fred W. Cox was admitted to the hospitals upon the occasions alleged in the defendant's answer; denies that the answers of Fred W. Cox were false, or that they were made to deceive the defendant, or that he fraudulently concealed and withheld certain facts from the defendant, and denies that the deceased was not in good health at the time of payment of said first premium.

The issues raised are: First, is whether the deceased, Fred W. Cox, made fraudulent representations as to the medical and hospital treatments received by him during the five-year period preceding the making of his application for the policy, and second, whether the deceased made fraudulent representations as to the

change of employment during the five-year period, and third, whether the deceased was in good health at the time of payment of the first premium on said insurance policy on March 5, 1945.

Upon the pleadings, evidence was heard before the trial court. Judgment was entered in favor of the plaintiff for the sum of $1,842. Costs of suit were assessed against the defendant, and from this judgment this appeal is prosecuted.

Part of the questions asked in the application for the policy were: "Have you ever had, or been treated for any disease or disturbance of, (answer each separately,) D. The stomach, liver, intestines, kidney or bladder?" Answer, yes, appendectomy, June 1926. Duration, One week. Result, good. No. 7 B. Have you ever had fainting or dizzy spells? Answer, No. D. Have you ever had, or been advised to have a surgical operation? Yes, cholecystectomy, February 1944. Result, good. Have you ever had any other illness or injury not mentioned above? No. 9. State every physician or practitioner whom you have consulted, or who has treated you during the past five years? (If none, so state.) Dr. R. E. Teney, Rockford, Illinois, June 1926, St. Anthony Hospital. Result, good. Dr. J. S. Lundholm, Rockford, Illinois, February 1944, Swedish Hospital. Result, good.

The evidence shows that the answers to these questions as above stated, were false. Carrie M. Cox, the appellee, was called as an adverse witness by the defendant, and testified that the deceased, Fred W. Cox, went to the Swedish-American Hospital in Rockford, Illinois, on February 13, 1944, for gall bladder trouble; that he returned to the hospital in August 1944, was there in October 1944, and went back again in December 1944, and again in February 1945; that on these occasions his doctor was J. S. Lundholm of Rockford. She also testified that Mr. Cox went to the Wisconsin

General Hospital at Madison, Wisconsin, about October of 1944; that he went back again to the same hospital in November 1944.

Dr. J. S. Lundholm testified that in February of 1944, he made a physical examination of Fred W. Cox and found that he had cholecystitis and hepatitis. (The first is an inflammation of the gall bladder and hepatitis is an inflammation of the liver;) that he treated him at that time for his illness, and saw him in September, October, and December of 1944; that at these times he treated him for hepatitis and pancreatitis, which is an inflammation of the pancreas, and that in February 1944, he operated upon Mr. Cox and removed his gallbladder. Being more specific, the doctor testified that he treated Mr. Cox in the Swedish-American Hospital on August 24, 1944, and for the following two days. He saw him from October 4, daily through October 10, from November 17, through the 20th, and again December 20, through December 31, and again February 1, through February 3, 1945. The doctor also testified in answer to the question, to whether the condition of hepatitis was of recent origin, or was chronic, that it was a chronic condition; that the condition of pancreatitis consists of an inflammation of the pancreas, and is usually characterized by sudden attacks of very severe pain in the upper abdomen, with nausea, vomiting, dizziness and that a certain amount of shock comes with this pain. He noticed that Mr. Cox suffered dizziness in connection with those attacks. Doctor Lundholm also testified that he told Mr. Cox that he was a little doubtful about his diagnosis of his complaint, and recommended that he go to the Wisconsin General Hospital at Madison, Wisconsin; that he made the necessary arrangements and Mr. Cox went to the hospital, as recommended.

Dr. Karver L. Puestow testified that he was a licensed physician of the State of Wisconsin and was located at Madison; that Mr. Fred W. Cox of Rock-

ford, Illinois, called at his office on October 24, 1944, at the Wisconsin General Hospital; that he had a conversation with Mr. Cox at that time, and Mr. Cox complained of pain in his abdomen, particularly on the right side; that he had a loss of appetite, and for the past six years he had had headaches, which sometimes were very severe; that he had dizziness and ringing in his ears. The doctor further testified that he and Dr. James Morton had made a complete physical examination and conducted some laboratory tests and decided that Mr. Cox had a large, tender liver; that he observed Mr. Cox had blueness about his lips and fingertips; that he told Mr. Cox that his condition was serious, but at that time he was not able to tell the exact nature of what the treatment should be, but that he was in real need of medical care; that it was his opinion that he was suffering from a liver trouble, and asked him to return to the hospital for further treatment, and to report at once to Dr. Lundholm at Rockford on his return to that city.

On cross-examination, the doctor testified that Mr. Cox appeared middle-aged and to be suffering from a chronic illness; that he told Mr. Cox that he was a sick man and that his, (the doctor's) examination had not been completed; that they wanted to study his case further; that he was given a return appointment, which he did not keep; that the condition of Mr. Cox was not acute, but was of long standing; that he told Mr. Cox that he should not be without medical care.

One of the provisions of the policy of insurance is as follows: "It is hereby agreed that any policy issued hereon shall not take effect until the first premium thereunder has been paid during the good health of the person whose life is proposed for insurance; that no agent or other person except the president, a vice-president, the secretary, the treasurer, a registrar, or an assistant registrar of the society has power to make or modify any contract on behalf of the society

or to waive any of the society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers. All of the foregoing statements and all those contained in Part II hereof are true, and are offered to the society as an inducement to issue the policy or policies for which application is hereby made.

■ From the facts as disclosed in this case, it is clear that Mr. Cox was not a well man at the time the policy of insurance was delivered to him. We can come to no other conclusion but that Mr. Cox knew of the different treatments, the hospitals in which he had been a patient, and the different doctors whom he had consulted, relative to his ailments, and that these facts were not disclosed, in his application for insurance. In his answer in No. 9, he stated that only one doctor had treated him within the five-year period, and that was Dr. Lundholm of Rockford, Illinois. The evidence discloses that Dr. Karver L. Peustow and Dr. James A. Morton also treated him and diagnosed his case as being a serious illness.

■ Our Supreme and Appellate Courts have frequently held that false representations in an application for a policy of insurance, if they are material to the risk, will void the policy. One of the leading cases on this subject is *Weinstein v. Metropolitan Life Ins. Co.*, 389 Ill. 571. The Supreme Court, in discussing the law applicable to such cases, uses this language: "The obvious purpose of eliciting information concerning examination at a clinic or by a physician is to afford an insurer an opportunity of ascertaining pertinent medical data as to the current physical condition of an applicant to supplement information already in its files. Knowledge thus obtained effectively places an insurer in a position to decide what type of policy, if any, may be issued and the premium to be charged. This important provision should not be subject to defeat, at the whim of an applicant, by his mere denial

of the visits. An insurer, informed even of a possibility of duodenal ulcer, would hardly ignore the information and issue a standard insurance policy covering the life of one likely to be so afflicted. It follows that an insurer is entitled to a truthful answer with respect to observation and examination at a clinic or by a physician and failure of an applicant to acquaint it with this information may well be material to the risk. That an ailment or malady, knowledge of which an applicant withheld from an insurer, was not actually the cause of death is not decisive against a finding of materiality. Materiality to risk may exist notwithstanding proof of fatality owing to another cause. . . ." To the same effect is *Tomasun v. Western & Southern Life Ins. Co.*, 358 Ill. 496; *Hamberg v. Mutual Life Ins. Co. of New York*, 322 Ill. App. 138; *Schmidt v. Prudential Ins. Co. of America*, 287 Ill. App. 431.

It is our conclusion that Fred W. Cox, at the time he made the application for insurance, made false answers to questions that were material to the risk, and also at the time of the delivery of the policy, he was not in good health, as required by the terms of the policy of insurance. Therefore, the judgment of the trial court is hereby reversed.

*Judgment reversed.*