**Dora Kater, Conservator of Louis Kater, an Incompetent, Plaintiff-Appellee, v. United Insurance Company of America, formerly United Insurance Company, Defendant-Appellant.**

### Gen. No. 10,256.

Third District.

February 18, 1960.

Rehearing denied March 22, 1960.

Released for publication March 22, 1960.

William J. Bach, of Bloomington, for defendant-appellant.

Costigan, Wollrab, and Yoder, of Bloomington, for plaintiff-appellee.

JUDGE CARROLL delivered the opinion of the court.

This is an action to recover benefits under an accident and sickness policy issued by defendant company (then the United Insurance Company) to Louis Kater, plaintiff's incompetent, who will be referred to herein as plaintiff.

The policy was dated July 25, 1952, and insured Louis Kater for losses resulting directly and independently of all other causes from accidental bodily injury and from sickness originating more than 20 days after the policy date. The pertinent portions of the policy are as follows:

"(Insuring Clause) United Insurance Company does hereby insure the person named in Policy Schedule (hereinafter called the Insured) subject to the terms, provisions and limitations of this policy (1) against loss of life, limb, sight or time resulting directly and independently of all other causes from accidental bodily injury, hereinafter called 'Such Injury' . . . and (2) against loss of time commencing while this Policy is in force from sickness . . ."

"Part Four—Total Disability Benefits for Life-Accident. If 'such injury' does not result in any of the specific losses . . . but within 20 days from the date of accident causes continuous total loss of time and total disability which prevents the insured from performing each and every duty pertaining to his occupation and requires regular and personal attendance of a licensed physician . . . the Company will pay at the rate of monthly benefit for one day or more for the period that the insured is so disabled, but not exceeding twelve consecutive months. If, after the payment of benefits for twelve consecutive months as aforesaid 'such injury' shall continue to cause continuous total loss of time and total disability and requires regular and personal attendance by a licensed physician—the Company will pay at the rate of the Monthly Benefit . . . so long as the insured lives and is so disabled."

24

Appearing on the face of the policy in red print is the following endorsement:

"The Company does not assume liability under any section of this Policy for or on account of loss by any disorder of the heart or circulatory system."

The complaint states that suit is brought pursuant to the Declaratory Judgment Section of the Statute, that on February 5, 1958, while the policy was in full force and effect, the insured received a laceration of his hand and as a direct and proximate result of such traumatic injury and medical care thereby necessitated, he suffered a cerebral hemorrhage which caused his total disability; that he will be disabled for the rest of his life; and that under Part IV of the policy, plaintiff is entitled to $300 per month for life. In its answer, in addition to denying the complaint allegations, defendant pleaded a number of affirmative defenses which in substance are that the injury to insured's hand did not cause the cerebral hemorrhage; that his total and continuous disability resulted from other causes occurring more than 20 days after the accident; that insured had suffered from angina pectoris in 1946; and that all disorders of the heart and circulatory system were excluded by an endorsement on the policy. Plaintiff filed its reply to these defenses admitting the angina pectoris but denying all other allegations thereof.

The cause was tried before the court and a judgment was entered in favor of plaintiff for $4225. The court also entered a declaratory judgment that the insured was totally disabled and entitled to the sum of $300 per month beginning February 5, 1959, and each month thereafter as long as said insured lives and is disabled. From such judgment defendant has appealed.

The grounds upon which reversal is sought are that loss occasioned by a cerebral hemorrhage is expressly

excluded by the policy; that plaintiff failed to prove that the cerebral hemorrhage resulted directly and independently of all other causes from accidental injury; that the cerebral hemorrhage did not occur within 20 days after insured's hand injury and consequently the proof fails to show proximate cause within the policy terms and that the judgment is manifestly against the weight of the evidence.

The evidence shows that on February 5, 1958, while the plaintiff was deep-sea fishing at Marathon, Florida, he fell against a coffee can used for holding bait and that as a result of such fall he sustained a cut on the palm side of his right hand between the fourth and little finger. Immediately following the accident, plaintiff was taken to the office of Dr. Lloyd Damsey who administered a shot of tetanus antitoxin and closed the wound, six stitches being required in the operation. At that time the patient's blood pressure was not taken. On February 7 and again on February 9, 1958, Dr. Damsey treated the wound for a local infection which had developed and gave plaintiff an antibiotic. There is evidence that two days after the accident the plaintiff began to lose the use of his right arm and was unable to dress or shave himself and that on February 8, 1958, his right leg was also affected. On February 10, 1958, plaintiff with his wife and daughter, with the daughter driving, started to travel by automobile to their home in Bloomington, Illinois. On February 11, 1958, the party stopped at Perry, Florida, where the stitches were removed from plaintiff's hand. When he arrived at Tallahassee, Florida, on the evening of the same day, he was unable to walk and was taken to a hospital. The following morning he was examined by Dr. I. Barnett Harrison, an internist whose impression was that plaintiff had suffered a small cerebral thrombosis resulting in right-sided weakness from which the Doctor thought there

26

was a good chance of recovery. On February 16, 1958, plaintiff's condition was improved sufficiently to permit his leaving the hospital. On being discharged he was driven by car to Mobile, Alabama, from where he travelled by train to Danville, Illinois. From Danville where he arrived on February 19, he was taken by ambulance to Brokaw Hospital in Bloomington where he remained until February 25, when he was released and returned to his home. While in Brokaw Hospital he was attended by Dr. Raymond E. Baxter, whose diagnosis was cerebral thrombosis with paresis of right arm and leg. On the trial Dr. Baxter testified that he had treated plaintiff since 1946 for arteriosclerotic heart disease and hypertension; that the patient had an attack of angina in 1946 of three months duration but had suffered no reoccurrence of such ailment; that he had seen plaintiff every month or two for a period of two years and thereafter saw him two or three times a year; that on each of those occasions he had taken plaintiff's blood pressure which was around 140 to 150 except on one occasion it reached 180; and that since 1946 plaintiff's heart condition had remained stable and his general condition was good. When plaintiff left Brokaw Hospital on February 25, he could walk with assistance. During March, 1958, Dr. Baxter saw him three times. On April 1, 1958, plaintiff was returned to Brokaw Hospital and at that time had developed a cerebral hemorrhage causing him to have right hemiplegia and aphasia. On April 21, 1958, plaintiff was taken to St. Joseph's Hospital for physiotherapy treatments. He was released from the latter institution on July 25, 1958, and since that time has remained at home.

At the time of the trial plaintiff's right side remained completely paralyzed and he still had aphasia. Dr. Baxter testified that plaintiff's condition is permanent. The evidence is that at the time of his injury

27

plaintiff was 58 years of age; that from 1946 to 1958 he was in charge of and worked at his automotive electrical service and parts business in Bloomington; that his work included travelling as a salesman; and that during such period he was suffering from no disability; that his heart condition had stabilized; that although having a mild hypertensive condition his blood pressure was kept under control by the use of drugs; that the drug prescribed was Raudixin, commonly used for moderate vascular changes; and that when plaintiff left for Florida he was suffering from a perianal infection for which he was given codeine and penicillin.

Defendant insists that plaintiff's loss was occasioned by a cerebral hemorrhage which constitutes a disorder of the circulatory system and that such disorder, regardless of whether it be traumatically caused is expressly excluded by the restrictive endorsement on the policy.

In considering such contention it is to be borne in mind that plaintiff's claim is brought under the accident provisions of the policy and is for loss resulting from accidental bodily injury. Recovery is not sought for a loss resulting from a disease or infirmity existing prior to the accident or which was contracted subsequent to and independent of the accident. Accordingly the decisive question is not the disorder from which plaintiff now suffers but whether the accidental injury to his hand was the direct and proximate cause of the paralysis and aphasia which has rendered him totally and permanently disabled. The general proposition of law that where a diseased condition resulting in disability is caused by an accident, the accident alone is considered the cause of the disability is well established. In 29 Am. Jur., Insurance, Page 751, it is stated as follows:

". . . if an accident results in disease or some other physical condition not directly within the coverage

of an insurance policy, and death or disability follows, the accident is still the proximate cause of such death or disability and recovery may be had upon the policy. The result is consequently within the coverage of an accident policy insuring against bodily injuries effected through external, violent, and accidental means if the disease or physical condition was proximately caused by a bodily injury occasioned through external, violent, and accidental means."

In United States Health & Accident Ins. Co. v. Harvey, 129 Ill. App. 104, the policy sued on excepted liability for injuries resulting directly or indirectly from poison or infection. Plaintiff injured his hand on a wire on a chicken coop and blood poisoning ensued. Defendant rejected plaintiff's claim for recovery on the policy on the ground that his disability was caused by poison or infection. The court in affirming a judgment for plaintiff, said:

". . . if the resulting disability is the effect of the accident, so as to be a mere link in the chain of causation between the accident and the disability, then the disability must be attributed to the accident alone, and is not excepted from the risk. The puncture by the wire or nail was within the terms of the policy, and blood poisoning resulting from, and being caused by the accident, was a disease caused by the accidental wound and is within the policy. Central Accident Ins. Co. v. Rembe, 220 Ill. 151, (and other cases)."

Another statement of the same rule is found in Coulter v. Travelers' Protective Ass'n, 144 Ill. App. 255. Defendant argues that the foregoing rule is not applicable to plaintiff's case because a cerebral hemorrhage is a disorder of the circulatory system and plaintiff cannot recover for the reason that liability for such disease is excluded by the restrictive endorsement on the policy. The basis of such argument is that the endorsement makes no distinction between a disorder caused

29

by an accident and one resulting from some other cause. The restrictive endorsement in question is without ambiguity and plainly exempts defendant from liability resulting from any disorder of the heart or circulatory system. Obviously this reference is to the health provisions of the policy and not to the accident coverage which it affords. Circulatory disorders are diseases not accidents. What the effect of the exception might be were this claim brought under the health provisions of the policy need not be decided in the instant case. That the endorsement accepts certain specified diseases is not disputed. The fact that prior to the date of the policy plaintiff had suffered an attack of angina affords a reasonable explanation for the endorsement which excludes from the risk a reoccurrence of such heart condition. If, as defendant urges, it was the intention of the parties to exclude certain disorders whether caused by accidental means or otherwise, it is significant that the endorsement does not reflect such intention. To hold that the endorsement is effective in avoiding the doctrine of proximate cause where, as in this case, the claim is for disability caused by an accident would amount to adding a provision to the contract of the parties. As indicated in its brief, it is apparently defendant's theory that the admitted hypertensive vascular condition in itself constitutes a defense to this action.

█ Such argument does not appear to find support in the authorities. In an action on an accident insurance policy, the mere fact that the loss claimed results from the combined effect of an accident and a pre-existing disease aggravated thereby does not necessarily preclude recovery on such accident policy. I. L. P., Insurance, Sec. 383. There are numerous cases in which courts have considered the question as to when, despite the presence of a disease, an accidental injury will be regarded as the direct cause of the

30

disability claimed under an accident insurance policy. In Rebenstorf v. Metropolitan Life Ins. Co., 299 Ill. App. 71, the plaintiff was injured in an automobile accident causing an acute acerbation of a then existing gall bladder condition, requiring an operation. There was evidence that plaintiff suffered from a heart condition and that the gall bladder condition caused a strain on the heart which produced heart failure and death. The defendant insurance company was held liable on a policy providing coverage against loss from disability and death resulting from accidental injury directly and independently of all other causes. In reaching its decision the court relied principally upon Scanlan v. Metropolitan Life Ins. Co., 93 F.2d 942, in which the defense that the death of the insured was caused by pre-existing bodily infirmity was interposed, and quoted from the opinion in the Scanlan case as follows:

"One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is nevertheless the accident, and recovery cannot be avoided or evaded."

In Letz v. World Ins. Co., 336 Ill. App. 489, the defense relied upon was that since the plaintiff was

suffering from a heart condition at the time of the accident in question and that the heart condition in conjunction with the accident caused plaintiff's death, there could be no recovery on an accident policy. In sustaining a verdict for the plaintiff, this court followed the Rebenstorf and Scanlan cases and had this to say:

"In a case of this character why should not the real test be whether or not the injury itself was accidental? If the accident, when operating upon either a healthy or unhealthy body, causes death by putting in motion a chain of events which can be directly traced back to the accidental injury, why then should not such accident be considered the sole cause of the death?"

In Preston v. Aetna Life Ins. Co., 174 F.2d 10, which was decided under Illinois law, the court dealt with a situation where the insured, who had a circulatory leg condition, struck his toe against a desk and his leg was later amputated after an ulcer had developed which failed to heal because of a circulatory impairment. The court held the injury to be accidental and that the insurer was liable. In discussing the Illinois law on the question involved, the court said:

"We believe that the weight of authority throughout the country supports the rule announced in the Rebenstorf, Scanlan and Nelson cases, and are justified we think, in concluding that the Supreme Court of Illinois would hold with the majority rule."

It is true that in Welte v. Metropolitan Life Ins. Co., 305 Ill. App. 120, the Appellate Court for the 2nd District reached a decision which, in some respects, is contrary to the rule followed in the Rebenstorf, Scanlan and Letz cases. However, we agree with the court's observation in the Preston case that the weight of authority supports the conclusion reached in the latter cases.

In view of the authorities to which we have referred, the question as to whether plaintiff's disability was

32

the result of an injury covered by the policy was one of fact to be determined by the trial court. In this connection the court had the benefit of a considerable amount of medical testimony as to the causative connection between the traumatic injury and the cerebral hemorrhage which later developed. Dr. Baxter, who had treated plaintiff and had been his physician for a number of years, testified that in his opinion the accident and subsequent infection created a physiological change in plaintiff causing blood pressure changes which produced a thrombosis which in turn caused the cerebral hemorrhage of April 1, 1958. Dr. Harrison, another witness who had examined plaintiff, stated that plaintiff's cerebral thrombosis might have resulted from a period of reflex hypertension directly connected to the trauma suffered; that the pain caused by the wound could lead to a transient reflex lowering of blood pressure which may be the factor that leads to cerebral ischemia. Dr. Wilbur Ball and Dr. Edward Livingston, neither of whom had ever treated or examined plaintiff, testified for defendant. In answer to a hypothetical question as to whether in his opinion there was a causal connection between the laceration of the hand on February 5, 1958, and the cerebral vascular accident of April 1, 1958, Dr. Ball stated that the possibility of a minor injury being the causative factor in producing a cerebral accident would be extremely remote and in his opinion there was no such connection. Dr. Livingston expressed an opinion that there was no causal connection between the accident and the cerebral hemorrhage because there was no evidence of faintness at the time of the accident. On cross-examination this witness stated there was a possibility of a relationship between the injury with its resulting infection, the tetanus shot and the cerebral thrombosis. Dr. Damsey, who treated plaintiff's wound also testified for the defendant and stated that while he was attending the plaintiff there was no relation

33

between the cut on his hand and the sclerosis. He further stated that he was not in a position to rule out the possibility that there was some connection between the hand wound and defendant's later disability. It is significant that defendant's medical witnesses failed to express the opinion that any of plaintiff's bodily infirmities alone would have caused the cerebral hemorrhage and resulting paralysis. The only opinion as to the cause of plaintiff's disability was that given by his doctors.

■ It thus appears that the evidence on the vital question as to whether the accident was the direct and proximate cause of plaintiff's disability was in conflict. It was for the trial court, sitting without a jury, to determine this disputed fact question.

■ It is the rule that where the proof conflicts, the determination made by the trier of the facts will not be disturbed unless such determination is clearly or palpably against and contrary to the manifest weight of the evidence. Letz v. World Ins. Co., supra.

■ We have carefully considered the evidence in the record and we are unable to say that the trial court's finding of fact is manifestly or palpably against the weight of the evidence and accordingly we would not be warranted in setting it aside. The judgment of the Circuit Court of McLean County is affirmed.

Affirmed.

REYNOLDS, P. J. and ROETH, J., concur.