(No. 39481.—

CROUCH-WALKER COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(BOBBIE POUGH, Appellee.)

*Opinion filed March 24, 1966.*

PRICE, NOETZEL, SCHLAGER & BURGESON, of Chicago, (JOHN E. CUNNINGHAM, of counsel,) for appellant.

BRADEN, HALL, BARNES & Moss, of Chicago, (HOUSTON H. HALL, MARY M. HALL, and ZEDRICK T. BRADEN, JR., of counsel,) for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Cook County affirming an award of compensation to Bobbie Pough, widow of Will E. Pough, against Crouch-Walker Company for injuries resulting in the death of Will E. Pough on August 6, 1962, from an accident which arose out of and in the course of his employment on June 5, 1962.

The deceased was employed by the employer as a mason laborer for 12 years prior to his death. On June 5, 1962, when he was mixing mortar a turnbuckle on a material hoist broke and the cable struck him. The accident was re-

ported and he was sent to a clinic but returned to his job one and one-half hours later and continued his regular work. While at work on July 25, 1962, he had lunch and when he attempted to rise from a sitting position he complained of a headache, stiff neck, went into a semi-conscious state and was taken to the Cook County Hospital. He had worked every working day from June 5, 1962, the day of the accident, until lunchtime on July 25, 1962. His work as a mason laborer involved physical strength as he was required to mix mortar, lift sacks of cement, concrete blocks, bricks and other material, and push heavily loaded wheelbarrows. At the Cook County Hospital his condition was diagnosed as a ruptured berry aneurysm and on July 27, 1962, an operation was performed to repair the rupture. The operation was apparently unsuccessful and he died on August 6, 1962.

On hearing before the arbitrator an eyewitness to the accident, Fred Bruce, stated that a cable snapped and hit the deceased on the back, that he fell to his knees and then got up and talked to the foreman. As to July 25 he testified that when they were getting ready to go back to work after lunch the decedent complained of headaches, started to shake, sweat, got sick, and was taken to the hospital. Ralph Allyn, mason superintendent for the employer, testified that on June 5, 1962, Will Pough reported the accident to him and that he saw a diagonal welt across Pough's shoulder blades. Bobbie Pough testified that her husband, the decedent, was in good health before June 5, 1962, but that when he came home after the accident he had some redness, bruises and swelling about his neck, up into the hairline, and on his shoulder, and he was holding the left lower part of his head and neck. She further testified that she applied cold towels at night to the affected part ever since that day until July 25 when he was taken to the hospital. The sister and mother of claimant substantiated the testimony of the claimant that the deceased would be unconscious from time

to time during the period involved and that he held his head on the left side and was very irritable. Dr. Gerald D. Copeland testified for the claimant stating that he saw and examined the deceased on July 26 at Cook County Hospital and that deceased's neck was tilted to the left side and he complained of severe neck pains and headache. He diagnosed the condition of the deceased as a ruptured berry aneurysm of the anterior communicating artery. He described his diagnosis in laymen's language as meaning that the deceased had a little balloon on one of the cervical arteries and this little balloon burst. An operation was performed to prevent the artery from rupturing further but the patient died. In response to a hypothetical question he stated there might or could be a causal connection between the injury and the accident of June 5, 1962, and the death on August 6, 1962. The employer offered no testimony at the hearing and the arbitrator made an award.

On review before the Industrial Commission the employer did not dispute the fact that the injury of June 5 arose out of and in the course of employment, but presented the testimony of Dr. Norman Dobin who stated that the extreme elements as a result of a rupture due to a berry aneurysm take place immediately and that the patient immediately sustains a stiff neck and headaches; unconsciousness also occurs almost immediately. He further stated that people don't just get sick in the night and become well during the day but that a person with a ruptured berry aneurysm would be sick continuously. Other witnesses had previously testified that they noticed nothing unusual about Will Pough while working between June 5 and July 25, 1962. In responses to a hypothetical question as to the causal connection between the blow on June 5 and decedent's hospitalization on July 25, Dr. Dobin stated that there was no causal connection and that trauma was not a factor in the rupture of a berry aneurysm; that the brain is well protected and particularly the blood vessels involved so that

direct trauma does not play a role. Under cross-examination he stated that it is possible for a break in the wall of a blood vessel or rupture to be extremely slight but still not be possible for this break to heal. There is a possibility of a slight sealing, and then the slight rupture could bleed from time to time. He further stated that such a rupture could only be caused by a pounding and pumping action such as the heart. He stated the only instance where trauma could aggravate the condition is where the trauma is direct, either by a bullet or by a fracture. Both Dr. Copeland and Dr. Dobin testified that a berry aneurysm is a congenital defect.

The main question before us is whether the record supports a finding of causal connection between the accident and the death due to a ruptured berry aneurysm seven weeks later.

It is well settled that the burden of proof is on the claimant. He must show an accidental injury within the meaning of the Workmen's Compensation Act and a causal connection between such injury and the subsequent death. If an award of the Commission is contrary to the manifest weight of the evidence, it is the duty of the court to set it aside. It is clear that the accident of June 5 arose out of and in the course of the employment and that whether a causal relationship existed between that injury and the subsequent death is essentially determined by the medical testimony. Although we have not detailed the entire medical testimony, it reveals a dispute between two doctors, one testifying that there could or might have been a causal relationship between the injury and death and one testifying that there was no causal relationship between the injury and death. We have frequently said that when the medical testimony is in dispute and the findings of the Industrial Commission are not contrary to the manifest weight of the evidence, the decision of the Commission will not be disturbed. (*Pesovic* v. *Industrial Com.* 33 Ill.2d 519.) Such is the case here. We feel that the testimony of Dr. Copeland

as to causal connection, although disputed, is sufficient to sustain the award.

The employer also contends that the arbitrator interjected her own line of questioning in the hearing before her to the extent that she went beyond reasonable limits to the prejudice of the employer. An arbitrator may ask questions of witnesses testifying at a hearing within reasonable limits and in order to clear up doubtful matters, but where both claimant and respondent are represented by attorneys, the main questioning of witnesses should be done by the attorneys. (*Heyworth* v. *Industrial Com.* 321 Ill. 298.) An examination of the record in this case reveals that the questioning of witnesses by the arbitrator was within reasonable limits and no prejudicial error was committed by the arbitrator.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*