LeRoy A. Carlson, Plaintiff-Appellee, v. New York Life Insurance Company, Defendant-Appellant.

**Gen. No. 65–70.**

Second District.

April 5, 1966.

Supplemental opinion December 27, 1966.

188

Spray, Price, Hough & Cushman, of Chicago, for appellant.

Rathje, Woodward & Dyer Associates, of Wheaton, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This was a suit to recover benefits under an accident policy issued by the defendant, New York Life Insurance Company. The jury returned verdicts finding that the plaintiff, LeRoy A. Carlson, was entitled to weekly benefits of $75 from October 30, 1958, to the date of trial, totalling $24,300, and that said weekly benefits should continue so "long as said plaintiff lives and is disabled." Judgments were entered on the verdicts, and the defendant prosecuted this appeal.

The insurance policy on which this suit was based, was issued to the plaintiff on December 13, 1955, and provided benefits only for specified losses caused by accidental bodily injury. The insuring clause insured "against specified losses resulting directly, and independently of all other causes, from accidental bodily injury . . . , subject to the terms and conditions of this Policy." Under

the "Exceptions" of the policy, it was provided that the insurance shall not cover any loss caused or contributed to by any one or more of the following: "(c) illness, disease, or any bacterial infection other than that occurring in consequence of accidental injury on the exterior of the body, . . . ."

Elsewhere, under the heading, "Time Limit on Certain Defenses," the policy provided:

"(2) No claim for loss incurred or disability (as defined in this Policy) commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a named condition not specifically excluded from the coverage had existed prior to the effective date of coverage of this Policy."

There is little dispute as to the relevant facts. On October 25, 1958, the plaintiff was adding a room to his home, and while sanding a door the sandpaper on the electric sander ripped, causing foreign matter to be propelled into his face and eyes. Plaintiff testified that dust and splinters flew into his face, and that with two fingers, he immediately pulled a sliver out of his left eye. His eyes were inflamed from the accident, and from that date until October 30, 1958 when he saw a doctor, he applied various medications to his eyes.

The doctor, whom he saw—a specialist in ophthalmology—hospitalized plaintiff and treated him from October 30 to December 16, 1958. The doctor testified that he found no evidence of a break, puncture or laceration in the plaintiff's left eye; and that as of December 16, 1958, there was nothing to prevent the plaintiff from performing his duties as an insurance salesman.

Two other ophthalmologists—who were largely in accord—testified that the plaintiff was suffering from lipoidal dystrophy, which either may or may not be the

result of a trauma to the cornea. Neither of these doctors found any evidence of a scar from an injury to plaintiff's left eye.

Plaintiff testified that from the date of the injury to the date of the trial, he consulted with and was examined by approximately 39 doctors; and that he visited 7 medical and psychiatric institutions. The majority of the doctors consulted were ophthalmologists; however, some were neurologists or psychiatrists. The plaintiff also testified to a series of pains and physical maladies following the injury to his eyes: sharp shooting pains in his left eye over an extended period of time; the discharge of two slivers and pus from his left eye in June of 1959; an impression of spasm, ripping or tearing apart of his head; sensations that his right eardrum was bursting, that the whole right side of his head was swollen, and that a clot of blood passed through the cavernous sinus of his head; and constant pain in the middle of his head which increased with either physical or mental activity.

He further testified that it was his recollection that various of the doctors who examined him from time to time advised him that he was losing the skin out of his eyes; that he was in shock; that he had a gross infection in his eye; that he had an infection of his middle ear; and that he had an infection of his whole head.

Three psychiatrists testified at the trial. Each stated that the plaintiff was suffering from schizophrenia, which resulted in total disability to carry on gainful employment. They concurred in the view that the plaintiff was suffering from somatic delusions; and that he was schizophrenic prior to the incident of October 25, 1958. However, they differed in their views as to when the plaintiff may have been a latent or an active schizophrenic, and as to whether the incident of October 25, 1958, may have been a precipitating factor causing a latent schizophrenia to become active.

Plaintiff's medical witness testified that prior to October 25, 1958, plaintiff's schizophrenia was latent. In answer to a hypothetical question, he stated that he was of the opinion that the incident on October 25, 1958, was the proximate cause of the activation of the schizophrenia. Defendant's medical witnesses testified that it was difficult to determine when active schizophrenia has its inception, but that plaintiff's falling sales records prior to the incident, as well as his belief that he had a splinter in his left eye, could well have been a symptom of such illness. In answer to hypothetical questions, neither of these witnesses believed the incident of October 25, 1958, could have been a precipitating factor in activating latent schizophrenia. The psychiatrists all agreed that the cause of schizophrenia is unknown; that the plaintiff had schizophrenia—either latent or active— prior to October 25, 1958, and that schizophrenia is an illness or disease.

The defendant contends that the trial court erred in refusing to direct verdicts for it at the close of all the evidence, or in refusing to grant it a judgment notwithstanding the verdicts, because as a matter of law the plaintiff's disability did not come within the coverage of the policy. In the alternative, the defendant contends it is entitled to a new trial because of errors in evidentiary rulings; in instructing the jury; and because the verdicts were contrary to the manifest weight of the evidence.

In resolving defendant's contention that the court erred in refusing to direct a verdict or to grant a judgment notwithstanding the verdict, we must view the evidence with its intendments most favorable to the plaintiff. Watts v. Bacon & Van Buskirk Glass Co., Inc., 18 Ill2d 226, 229, 236, 163 NE2d 425 (1960) ; Tucker v. New York, C. & St. L. R. Co., 12 Ill2d 532, 534, 147 NE2d 376 (1958). We must, at this posture of the case, accept as true that plaintiff's schizophrenia was latent prior to

October 25, 1958, and became active as a result of that incident.

The question of whether plaintiff's disability is covered by the policy depends on whether it is a loss as defined in the insuring clause as "resulting directly, and independently of all other causes, from accidental bodily injury," or whether it is a loss "caused or contributed to by . . . illness, disease, or bacterial infection other than that occurring in consequence of accidental injury on the exterior of the body" as specified in the "Exemptions" paragraph.

It is the defendant's position that there is no liability under the policy unless the accidental injury is the sole and independent cause of the resulting disability; and that if the loss is caused in part by the preexisting illness —the latent schizophrenia—there can be no recovery. It must be conceded that if read literally the policy seems to provide as the defendant urges. Further, there is authority, including the decision of this court in Welte v. Metropolitan Life Ins. Co., 305 Ill App 120, 27 NE2d 63 (2nd Dist 1940), to support defendant's contention. Under this rationale, if a preexisting illness and an accidental injury combine to cause a resulting disability and loss, the insurer is not liable under the policy. Also see: Schroeder v. Police & Firemen's Ins. Ass'n, 300 Ill App 375, 382, 21 NE2d 16 (3rd Dist 1939); Ebbert v. Metropolitan Life Ins. Co., 289 Ill App 342, 16 NE2d 749 (1st Dist 1937).

The plaintiff argues that under this policy the fact that the disability is the result of the combined effect of an accidental injury and a preexisting disease, does not necessarily preclude recovery; and that under such circumstances, the right to recover is dependent upon whether the accidental injury was the "proximate cause" of the resulting loss or disability. Kater v. United Ins. Co. of America, 25 Ill App2d 22, 30, 165 NE2d 74 (3rd Dist 1960); Rebenstorf v. Metropolitan Life Ins. Co., 299

Ill App 71, 84, 19 NE2d 420 (1st Dist 1939) ; 29A Am Jur (Insurance) secs 1134 and 1162, pp 288, 289, 307, 308 ; 22 ILP (Insurance), sec 383, pp 422–424.

In Rebenstorf v. Metropolitan Life Ins. Co., supra, the court, on pages 84 and 85, in quoting from Scanlan v. Metropolitan Life Ins. Co., 93 F2d 942, stated:

"One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is nevertheless the accident, and recovery cannot be avoided or evaded. (Citations.)"

We concur in this pronouncement. If the loss must be attributed in every case to the accidental injury solely, exclusively and totally independent of any other factor, then there would be a very rare incidence of coverage under an accident policy. As stated by Mr. Justice Cardozo in Silverstein v. Metropolitan Life Ins. Co., 254 NY 81, 171 NE 914 (1930)—a landmark decision on this subject—at page 915:

"If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby

195

death results, then there may be recovery even though the accident would not have had that effect on a healthy person in normal state. . . . The infinite interplay of causes makes it impossible to segregate any single cause as operative at any time and place to the exclusion of all others, if cause is to be viewed as a concept of science or philosophy."

■ ■ The body of law on this subject is vast and varied. See Annotations: 131 ALR 240–269; 84 ALR2d 176–317. We might indulge in extended rationalization to justify our interpretation of the insurance contract, but we prefer simply to state that the purpose of the insurance contract would be gravely thwarted if the clause with which we are concerned were read to exclude coverage for any loss except that resulting solely and exclusively from accidental injury, without any other contributing cause. The policy must be construed in the light of the reasonable expectation and purpose of the ordinary man when making an ordinary contract. In the words of Dean Roscoe Pound, "The law enforces reasonable expectations arising out of conduct, relations and situations." See Introduction to the Philosophy of Law, page 189. The view that an insurer may escape liability, when there is interplay between a preexisting illness and an accidental injury and "but-for" each there would not have been the resulting liability, is not acceptable to this court.

■ We adopt the view that where, under an insurance policy as in the case at bar, there is a preexisting illness or disease and an accidental injury and a loss or disability results, the pivotal issue is whether the accidental injury was the proximate cause of the resulting loss. A preexisting disease or illness, although contributing to the loss resulting from the accident, does not relieve the insurer of liability where the accident is the proximate cause of the loss. See: Kater v. United Ins.

196

Co. of America, supra; Functional Analysis of Exceptions in Accident Insurance—Eugene F. Mooney, U of I Law Forum, Fall 1963, No. 3, pages 495, 515–527.

In adopting this view, we place no significance on the circumstance of whether the limiting language as to liability is contained in the insuring or in the exclusionary clause. We concur with the conclusion of the court in Kater, supra, at page 32, that the decision in Welte is contrary to the weight of the authority; and, to the extent Welte v. Metropolitan Life Ins. Co., supra, is inconsistent herewith, it is hereby overruled.

■ Tested by these standards, and with the evidence viewed in the light most favorable to the plaintiff, namely: that the latent schizophrenia was activated by the injury of October 25, 1958, we cannot state, as a matter of law, that the defendant was entitled either to a directed verdict or to a judgment notwithstanding the verdict. Whether or not the accidental injury was the proximate cause of the resulting disability, was a question of fact for the jury to determine.

■ ■ The defendant has charged error in evidentiary rulings and in instructing the jury, as grounds for reversal and a new trial. One month before commencing this action, the plaintiff filed a malpractice suit against one of the doctors who treated him, alleging that the doctor's negligent care was the "proximate cause" of his disability. The trial court refused to admit a certified copy of the complaint in said action in evidence. This was error—as the complaint was competent evidence as an admission. Chambers v. Appel, 392 Ill 294, 306, 307, 64 NE2d 511 (1946); Allen v. United States Fidelity & Guaranty Co., 269 Ill 234, 241, 109 NE2d 1035 (1915); Robbins v. Butler, 24 Ill 387, 427 (1860). The plaintiff could thereafter explain or contradict the admission contained in the pleading, but it was competent evidence.

The plaintiff contends that the pleading was properly excluded under the authority of McCormick v. Kopmann,

23 Ill App2d 189, 202, 161 NE2d 720 (3rd Dist 1959), where it was held that alternative fact allegations set forth in the respective counts of the complaint therein, and based upon genuine doubt, may not be used as judicial admissions against other counts; and that such pleading only admitted the pleader's uncertainty. In the case at bar, unlike McCormick, we have no alternative pleading, but rather, a pleading in another cause of action which contained the admission in question. The pleading was admissible and the admission was proper evidence.

The defendant also contends that the trial court erred in refusing to admit in evidence the complete contents of a letter written by Dr. Hanni, one of the defendant's witnesses, in response to a letter from plaintiff's attorney. Prior to the trial, plaintiff's attorney wrote Dr. Hanni asking whether the schizophrenic condition "might or could have been caused by the traumatic episode and injury that occurred on or about the 30th day of October, 1958." Dr. Hanni testified on direct examination that in his opinion the accident on October 25, 1958, could not be considered a precipitating factor in connection with the plaintiff's schizophrenic illness. In cross-examining Dr. Hanni, the plaintiff's attorney elicited, as impeaching evidence, that the doctor had written a letter to him stating: "It is theoretically possible that the episode of injury constituted a precipitating factor."

█ Upon redirect examination, the defendant sought to have the entire correspondence between plaintiff's attorney and the doctor read to the jury in order to state the question to which the doctor's letter replied, and to set forth the entire contents of the doctor's reply, which was:

"I have reviewed my file on Mr. Carlson carefully in an effort to answer the question put to me by your letter of July 5th, 1962.

"The diagnosis that I established following my examination was schizophrenic reaction, paranoid type, of severe degree. Since the causes of this disease are obscure the question that you asked is difficult to answer. It is my opinion that the causes of this disease consist chiefly of abnormal personality development in early childhood. I could not regard this episode of injury in October 1958 as a cause of the illness. It is theoretically possible that the episode of injury constituted a precipitating factor.

"In summary then it would be my opinion that Mr. Carlson's mental condition was not a result of any injury that he sustained in October 1958."

The sentence to which plaintiff's counsel referred in the cross-examination of Dr. Hanni, when taken out of context and read alone, imports an entirely different meaning than when read within the context of the entire letter. The impeaching evidence, it would seem, would have an entirely different significance to the jury if the entire letter were disclosed. Thus, it was error to refuse to permit the defendant to bring out the remainder of the letter and the entire correspondence in redirect examination. People v. Kostos, 21 Ill2d 496, 500, 173 NE2d 466 (1961); People v. Munday, 280 Ill 32, 59, 117 NE 286 (1917); Barnes v. Northern Trust Co., 169 Ill 112, 121, 48 NE 31 (1897); Cleary, Handbook of Illinois Evidence, 2nd Ed, Secs 6.17, 9.12, pp 96, 97, 144, 145.

The defendant further contends that the trial court erred in permitting plaintiff's expert witness to testify as to the ultimate issue, and to give an opinion in answer to a hypothetical question which assumed facts not in evidence.

In Clifford-Jacobs Forging Co. v. Industrial Commission, 19 Ill2d 236, 166 NE2d 582 (1960), the court held that the refinements previously followed as

199

to whether an expert witness could testify that a given event "caused" a condition, or whether he could only testify that a given event "might or could" cause a condition, were of no merit, and at page 243 stated: "So long as the witness is not called upon to decide any controverted fact, but is asked to assume the truth of the facts testified to, he may give his opinion thereon in any form." In so holding, the court cited Chicago Union Traction Co. v. Roberts, 229 Ill 481, 82 NE 401 (1907), which at page 484 stated:

"It is not the province of an expert to act as judge or jury. He cannot be called upon to decide a question of fact. The object of a hypothetical question is to obtain the opinion, upon a subject not within the knowledge of men of ordinary experience, of one who by a previous course of habit or study has acquired a knowledge of that subject. The hypothetical statement of facts must be taken to be true. The opinion is permitted to be given to enable the jurors to draw the inferences from the evidence which their want of knowledge would otherwise prevent. In this case the question was whether the appellee's condition was due to traumatism or other causes. It was a question for the jury to determine, but it was impossible for them to answer without hearing the opinions of physicians. These opinions did not invade the province of the jury. . . . It is entirely immaterial whether the witness testified that the injury was the cause of the condition, or that the injury was sufficient to cause the condition or might have caused it. In any event, the testimony was merely the opinion of the witness, given, as such, upon a state of facts assumed to be true. It still remained for the jury to determine the facts, and the opinion was nevertheless an opinion only, whether it states what did cause the condition or what

200

might cause it. The question may be asked in either form."

We concur in the foregoing rationale of Chicago Union Traction Co. v. Roberts, supra. The nature of the case at bar was such that the determination of the ultimate issue required a degree of expertise—an expert opinion—if the jury was to reach a considered verdict. Even though the expert opinion was on the ultimate issue, it was only an opinion and, in the interest of ascertaining the truth on the issue in controversy, it should not be barred.

The hypothetical question placed to the doctor, however, contained reference to numerous facts which were not in evidence. The plaintiff had been permitted to testify to what he believed numerous doctors had diagnosed as wrong with him and what he believed numerous doctors had told him. However, it was stipulated that he could so testify to show his state of mind, but that this testimony was not to be considered as evidence of what these doctors actually diagnosed or said to the plaintiff. The hypothetical question did not contain these assertions within this restricted scope. It stated the various reputed diagnoses and statements of doctors as having in fact been made. There was no evidence to support this. The opinion of the doctor was improper in that it was based in part on assumed facts, not supported by the evidence. Butler v. Palm, 36 Ill App2d 351, 365, 184 NE2d 633 (2nd Dist 1962) ; Schwartz v. Peoples Gas Light & Coke Co., 35 Ill App2d 25, 32, 181 NE2d 826 (1st Dist 1962) ; Kanne v. Metropolitan Life Ins. Co., 310 Ill App 524, 530, 531, 34 NE2d 732 (1st Dist 1941). The error of the hypothetical question in the case at bar was compounded in that it suggested to the jury that certain of the diagnoses and statements supposedly made by doctors, who were not called to testify, could be true.

201

■ ■ The defendant also contends that the trial court erred in permitting the plaintiff to be withdrawn from the stand so that plaintiff's expert medical witness could testify and return to Michigan. The trial judge has discretion to permit evidence to be presented out of order. But here the defendant was definitely injured by this course of action. The expert placed on the stand gave his opinion based upon a number of hypothetical facts, which it was presumed would be testified to by the plaintiff. The defendant had been given no opportunity to cross-examine the plaintiff and was thereby restricted in presenting to the expert medical witness alternate assumed facts based upon plaintiff's testimony. The result of taking these particular witnesses out of order, was to deprive the defendant of the full right of cross-examination of the expert witness. It constituted error.

It is also contended that certain exhibits which were in plaintiff's possession—which he had received while a salesman for the defendant—were erroneously admitted in evidence. These exhibits related primarily to the "Incontestability" clause which provided a time limit on certain defenses.

■ ■ The incontestability clause may not be read as an "insuring" or "coverage" clause. This clause merely provides that after the elapsed period of time, the insurer may not urge the defense that the policy was invalid in its inception, or thereafter, by reason of a condition broken. Metropolitan Life Ins. Co. v. Conway, 252 NY 449, 169 NE 642 (1930). Such a clause does not alter the scope of coverage of a policy. The insurer in the case at bar contested the plaintiff's interpretation of the coverage of the policy—not its validity. The incontestability clause pertained to the truth of the representations made in the application for insurance, and had no relevancy to the determination of the question of coverage. Pekras v. Prudential Ins. Co. of America, 291 Ill App 597,

599, 600, 10 NE2d 704 (1st Dist 1937); Williamson v. American Ins. Union, Inc., 284 Ill App 150, 159, 1 NE2d 541 (1st Dist 1936).

The proximate cause of the resulting disability in this case was a close question. Neither the incontestability clause nor the exhibits relating thereto had any relevancy. The reference thereto by plaintiff's counsel, could have been interpreted by the jury to mean that the pre-existing illness could not be a defense to liability, regardless of whether it was the proximate cause of the resulting disability. Such misconception by the jury relative to the incontestability clause and the related exhibits, could preclude a fair trial.

The defendant contends that the court erred in the giving and refusing of certain instructions. However, it did not abstract all of the instructions which were given and were this the only ground urged for reversal, we would thus be compelled to affirm. Okai v. United Roofing & Siding Co., 24 Ill App2d 243, 247, 164 NE2d 237 (4th Dist 1960); Pantlen v. Gottschalk, 21 Ill App2d 163, 177, 157 NE2d 548 (3rd Dist 1959).

Because of the nature of this case and the close questions involved, we believe that the errors which we have referred to are sufficiently prejudicial to defendant to warrant a new trial. The cause is, accordingly, reversed and remanded for a new trial in accordance with the views expressed herein.

Reversed and remanded with directions.

MORAN, P. J. and ABRAHAMSON, J., concur.

SUPPLEMENT TO OPINION AFTER ALLOWANCE OF PETITION FOR REHEARING

We granted the defendant a rehearing so that both parties might fully set forth their positions on our inter-

pretation of the insurance contract with reference to the causative factor of plaintiff's injury. Both parties have presented able and persuasive arguments relative to the interpretation which should be given the clause which insured the defendant "against specified losses resulting directly, and independently of all other causes, from accidental bodily injury"; and the exclusionary clause which provided that the policy should not cover any loss "caused or contributed to by . . . illness, disease, or bacterial infection other than that occurring in consequence of accidental injury on the exterior of the body."

The defendant in its petition urges that we should have held that the trial court erred in failing to direct a verdict or grant a judgment notwithstanding the verdict in defendant's favor; and that we have done violence to the clear and unequivocal language of the contract and have erroneously adopted and applied a tort concept to contract law.

In reevaluating the insurance contract, in the light of its purpose and language, we feel we must adhere to the view expressed in our original opinion. An accidental injury must necessarily act on the bodies of persons in varied states of health and well or ill-being. The insured's particular condition of well or ill-being may aggravate or lessen the resulting disability or loss; or such existing condition may be the precipitating and principal cause of the resulting disability which is merely aggravated by the accidental injury.

As stated in the original opinion, if the policy is to be construed in such manner that in order to recover, the disability must result from an accidental injury *solely, exclusively* and *totally independent* of any other factor, there would be only a rare incident of coverage. In view of the infinite interplay of causes, we do not believe that it is scientifically or philosophically possible to isolate any single cause as operative at any time or place to the exclusion of all others. Where there is a preexist-

204

ing illness or disease and an accidental injury and a loss or disability, as in the case at bar, we hold the pivotal issue to be whether the accidental injury was the proximate cause of the resulting loss, and we do not believe that the strict interpretation of the policy urged by the defendant would be within the reasonable expectation and purpose of the ordinary man when making an ordinary contract. In construing this policy, we adhere to the concept that the law should enforce reasonable expectations arising out of conduct, relations and situations.

Under analogous circumstances—where heart attacks occurred during the working hours. of employees and claims for compensation were made—the Illinois Supreme Court was called upon to construe the Workmen's Compensation Act (Ill Rev Stats 1965, c 48, § 138.1 et seq.). Under this Act it was specified that compensation would be paid for injury or death only where the accident "arises out of" and "in the course of" the employment.

In the earlier decisions, the court denied compensation in preexisting cardiac cases where there was no accidental injury within the generally understood meaning of the term. See: Jakub v. Industrial Commission, 288 Ill 87, 123 NE 263 (1919). In the case of E. Baggot Co. v. Industrial Commission, 290 Ill 530, 125 NE 254 (1919), the court held that in order for the injury to be compensable, the strain on the heart must have been due to an unusual or extraordinary exertion and must have resulted in an internal rupture of the heart or connecting blood vessels.

However, in Republic Steel Corp. v. Industrial Commission, 26 Ill2d 32, 185 NE2d 877 (1962); Clifford-Jacobs Forging Co. v. Industrial Commission, 19 Ill2d 236, 166 NE2d 582 (1960); Laclede Steel Co. v. Industrial Commission, 6 Ill2d 296, 128 NE2d 718 (1955) and Bethlehem Steel Co. v. Industrial Commission, 6 Ill2d 290, 128 NE2d 714 (1955), the court has greatly liberal-

ized its interpretation of the "accidental" injury requirement.

In Republic Steel Corp. v. Industrial Commission, supra, at page 45, the court stated:

> "To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury."

And, in Thomas J. Douglass & Co. v. Industrial Commission, 35 Ill2d 100, 219 NE2d 486 (1966)—where an award for total permanent disability, based upon neurosis following injury, was affirmed—the court stated at pages 104 and 105:

> "In the case at bar it is evident that whether a causal relationship existed between the injury and claimant's mental condition, and whether the latter has rendered him permanently disabled, depend principally upon the medical testimony. Dr. Kesert testified to the presence of such a causal connection and to the permanence of the condition, and one of the respondent's medical witnesses admitted on cross-examination that there might or could be a traumatic neurosis resulting from amputation of the toes. Although there was other evidence indicating the contrary, the evidence on the whole is such that different inferences could reasonably be drawn therefrom. The determination of these disputed questions of fact, as we have often pointed out, is primarily a function of the Industrial Commission. (Gould National Batteries Inc. v. Ind. Com., No. 39282, 214 NE2d 750; Zion Industries Inc. v. Ind. Com. 33 Ill2d 314.) When the medical testimony

is in dispute and the findings of the Industrial Commission cannot be said to be contrary to the manifest weight of the evidence, the decision of the commission will not be disturbed. (Crouch-Walker Co. v. Ind. Com., No. 39481, 215 NE2d 441.) Such is the case here."

The causal relationship referred to by the Supreme Court in its construction of the Workmen's Compensation Act can well be equated to the proximate cause in the case at bar. In the life, development and growth of the law, a nice tidy logical perfection of mechanical rules can rarely be achieved and certain basic considerations of justice, fundamental fairness and reasonable expectations arising out of conduct, relations and situations should not be sacrificed in an attempt to achieve such hard and fast rules. We believe that our interpretation of the policy in the case at bar is of the type which yields rational results in real cases; and we recognize that this view, and that urged by the defendant, represent the never ending struggle in the law between certainty and limited flexibility.

We are not impressed by the defendant's argument that we have erroneously adopted and applied a tort concept to contract law. In the history of the development of the common law, the chancellor, as the keeper of the King's conscience, would invent and issue writs to ameliorate the inequities of the existing law—and matters involving fraud, accident and breach of confidence were particularly within his competence.

Subsequently, these matters, which sound in tort, were recognized as the basis for a legal action and as a legal defense to varying types of action, particularly those arising out of contract. One of the classic examples of such tort defense is found in contract actions wherein an insured has sued his insurer on an insurance policy and the insurer's defense is that the insured obtained

the policy by virtue of false or fraudulent representations or deceit. And in a myriad of such cases, such defense has prevailed. See: Weinstein v. Metropolitan Life Ins. Co., 389 Ill 571, 60 NE2d 207 (1945); Western & Southern Life Ins. Co. v. Tomasun, 358 Ill 496, 193 NE 451 (1934); Mooney v. Underwriters at Lloyd's London, 54 Ill App2d 237, 204 NE2d 51 (1964); Cox v. Equitable Life Assur. Society of United States, 333 Ill App 207, 76 NE2d 529 (1947) and cases cited therein. In view of the long and repeated recognition of the right of an insurer to plead and assert a defense sounding in tort to a suit in contract based on the applicable insurance policy, we are not reticent to apply the tort principle of proximate cause in our construction of the meaning of the insuring and exclusionary clauses of the insurance policy under consideration.

Many years ago, Mr. Justice Cardozo made a statement apropos of the circumstances here involved: "The process of justice is never finished, but reproduces itself, generation after generation, in everchanging forms."

The verity of these words may be found in the decisions of the Illinois courts, among which are: Amann v. Faidy, 415 Ill 422, 114 NE2d 412 (1953), which overruled Allaire v. St. Luke's Hospital, 184 Ill 359, 56 NE 638 (1900), and held that a viable child, who survives birth, should be permitted upon proper proof, to recover for injuries received before birth; Bradley v. Fox, 7 Ill2d 106, 129 NE2d 699 (1955), which overruled Welsh v. James, 408 Ill 18, 95 NE2d 872 (1951), and held that one who murders his joint tenant destroys all right of survivorship to jointly held property; Nudd v. Matsoukas, 7 Ill2d 608, 131 NE2d 525 (1956), which held that while the public policy rule of parental immunity from suit by a child may be such justification as to prevent suits for mere negligence within the parental relationship, such policy should not prevent a minor from obtaining redress for wilful and wanton misconduct

on the part of a parent; Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill2d 11, 163 NE2d 89 (1959), which overruled Kinnare v. City of Chicago, 171 Ill 332, 49 NE 536 (1898), and subsequent cases, and held that the judicially created doctrine of sovereign immunity, as extended to school districts granting them freedom from tort liability, is abolished; and Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182 (1965), which held that the manufacturer or seller of a defective product or component part may be held strictly liable in tort for injuries sustained by a subpurchaser by virtue of the defective product, notwithstanding the absence of privity of contract with the manufacturer or seller.

The enlightened principles manifested in the above decisions sustain the view that the genius and glory of the common law lies in its responsiveness to the existing realities of a dynamic and changing society, and to its awareness of the value of stability and tradition without irrevocable commitment to outworn precedent. Chidester v. Cagwin, 76 Ill App2d 477.

We do not believe that the view adopted by the opinion of this court does violence to the language of the contract. Whether or not a resulting loss is covered must depend on whether or not the accidental injury is the direct and proximate cause thereof. A preexisting disease or illness will relieve the insurer of liability when it is the direct and proximate cause of the loss. Of the dichotomy of views on this problem, we believe that the cases cited and followed by us represent the better rationale.

Accepting all of the evidence with all of the reasonable inferences which may be drawn therefrom in the light most favorable to the plaintiff—as we must do—we cannot say as a matter of law that the preexisting illness, rather than the accidental injury, was the proximate cause of the resulting loss.

With deference and due respect to both the other courts and counsel for the defendant, which embrace

views to the contrary, we adhere to our original opinion filed herein.

Reversed and remanded with directions.

MORAN, P. J., concurs.

ABRAHAMSON, J., dissents.